317 F.Supp. 612 (1970)
UNITED STATES of America, Plaintiff,
v.
Samuel MALKIN, Defendant.
No. 69-C-495.
United States District Court, E. D. New York.
May 1, 1970.
Edward R. Neaher, U. S. Atty., Eastern District of New York, for plaintiff; Louis R. Rosenthal, Asst. U. S. Atty., of counsel.
*613 Rivkin, Rosen & Reicher, New York City, for defendant; Louis Rivkin, New York City, of counsel.
ROSLING, District Judge.
The plaintiff United States moves for summary judgment in its favor in an action brought against the defendant Samuel Malkin upon unpaid balances of tax assessments filed against him.
Defendant's opposing affidavit, contesting neither the assessments nor their presumptive prima facie value[1] in establishing the government's claim against him, proposes as an issue the defense of the statute of limitations. The Court finds, for the reasons noted in the following, that the statute has not run, and directs that the answer be stricken and judgment entered for the plaintiff as prayed for in the complaint.
The assessments upon which the government proceeds are of two kinds. The assessments in the first group were filed against defendant on four separate dates, to wit, February 28, 1955, June 8, 1955, August 31, 1955 and April 13, 1956. They are claimed by the I.R.S. to be for outstanding withholding tax liabilities of a partnership, Verlin and Sons, and to rest on defendant's status as a partner-member of Verlin. The second group comprises assessments filed against defendant as a responsible officer of a corporation, Arvee Stores, Inc., for withholding tax installments owing for various quarters, the earliest being the first quarter of 1953, and the most recent, the second quarter of 1955. All installments were, however, timely assessed against defendant on a single date, namely, January 15, 1957.
This action for the collection of the assessments was commenced on May 12, 1969, by the filing of the complaint on that day.[2]
26 U.S.C. § 6502(a) provides that following due assessment
"such tax may be collected * * * by a proceeding in court, * * * begun
(1) within 6 years after the assessment of the tax, or
(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period * * *
The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."
The basic six year period for the commencement of this action has, accordingly, long since expired even as to the liabilities most recently assessed (January 15, 1957). The moving affidavit, however, alleges, and defendant's opposing papers concede that there have been three extensions of time which tolled the six year statute. The extensions were executed by defendant in relation to offers in compromise of the tax liability proposed by him to the I.R.S. The stipulations of extension provided for "the suspension of the running of the statutory period of limitations on * * * collection for the period during which this offer is pending, on the period during *614 which any installment remains unpaid, and for 1 year thereafter."
The effective periods of extension of the several stipulations were as follows:

 Offer Rejected Statute suspended Period of
 Offer filed or withdrawn to[3] extension
 7/14/58 2/18/59 2/18/60 1 yr. 219 days
 3/5/63 4/22/64 8/24/64[4] 1 yr. 172 days
 8/25/64 1/11/66 1/11/67 2 yrs. 139 days
 ________________
 Total period of suspension 5 yrs. 165 days
 Statutory period for collection
 after assessment 6 yrs.
 ________________
 Total period for bringing
 suit after assessment 11 yrs 165 days

Inasmuch as the most recent date of assessment, as noted above, was January 15, 1957, the latest date for bringing timely suit on such installment would have been June 28, 1968. The commencement of action on May 12, 1969, as is here the situation, would be untimely, were we to consider only the allegations of the moving affidavit, inasmuch as no further suspension of the statute of limitations is claimed therein.
Paragraph VIII of the complaint, however, contains the following allegation:
"An involuntary petition in bankruptcy was filed against Samuel Malkin as a co-partner doing business with others in the Eastern District of New York on October 7, 1955. An order closing the estate was issued by the Referee in Bankruptcy on March 10, 1958. Pursuant to the provisions of Section 6503(b) of the Internal Revenue Code of 1954 the period of limitations on collection of the above-described assessments was suspended while the defendant's property was within the custody of the court and for six months thereafter, to wit: September 10, 1958."[5]
Defendant's answer appears to concede the factual content of such paragraph, denying only its legal effect.
The government's brief in support of the motion repeats the allegation of Paragraph VIII of its complaint.[6]
Defendant's opposing affidavit argues without specificity as to the impact of the bankruptcy upon the running of the statute. It, however, supplies any deficiency in plaintiff's moving papers by *615 noting that defendant has "subpoenaed the bankruptcy records but [was] advised that they arebecause of their age in the warehouse and that it will probably take several days before they will be presented to the Court." The records thus available to the Court, indicate that the petition in bankruptcy, an involuntary one, was filed on October 7, 1955, against the copartnership Verlin & Sons, and the three individuals, including defendant Malkin, who comprised all the members of the entity; further, that on the same day the partnership and its partners were all adjudicated bankrupt upon their consent annexed to the petition.
The bankrupts were subsequently discharged by order of the referee, to whom the matter had been referred, made October 17, 1956.[7] On March 10, 1958, a further order was entered by the referee discharging the trustee in bankruptcy and cancelling his bond. Docket sheets of the Clerk of the Court annexed to the opposing papers indicate that the case was closed by referee's order made the same day.[8]
From the date of the filing of the involuntary petition in bankruptcy, which was also the date of adjudication, in consequence of the consent of the bankrupts to their adjudication, to the date when the trustee was discharged and his bond cancelled, (October 7, 1955 to March 10, 1958) a period of 2 years 154 days elapsed. To this term of suspension of limitation 6 months must be added under 26 U.S.C. § 6503(b) to compute the maximum limit of the suspension by reason of the supervening bankruptcy. Inasmuch, however, as the period of suspension under the first of the extension stipulations, (see supra p. 4), began on July 14, 1958, so much of the closing period of the bankruptcy extension as overlapped the initial portion of the suspension under the first stipulation must be eliminated. The period of suspension by reason of the bankruptcy is, accordingly, reduced so that it runs from October 7, 1955 to July 13, 1958, both dates inclusive, a period of 2 years 279 days.
The total period of limitations when recomputed to take into account such elimination, is as follows:

 Basic period of limitation 6 years
 Suspended by stipulations 5 years 165 days
 Suspended by bankruptcy 2 years 279 days
 _________________
 Total period of
 limitation as extended 14 years 79 days

Inasmuch as the earliest assessment was filed on February 28, 1955, action might be timely instituted as to that installment as late as May 18, 1969, six days after action was in fact begun. The subsequent assessments have a correspondingly later date as permissible for commencement of suit.
Defendant contends that a shorter period of suspension of the statute of limitations in consequence of the bankruptcy proceeding than the government urges should be applied. His affidavit argues that defendant was discharged in bankruptcy on March 4, 1957; hence, the statute was tolled only until September 4, 1957, six months later. Defendant's brief, moreover, after noting that "the entire file [of the bankruptcy proceeding] will be requisitioned as part of this record on the argument of the motion," contends that the "file will show that nothing was under the control or custody of the court in the said bankruptcy proceeding after March 4, 1957, which *616 was the date of discharge, and at the latest on October 7, 1957, which was the date of distribution." Disregarding this latter date, the brief at a later point declares,
"But the record on file in this Court shows that there was nothing under the control or custody of the Court at least after March 4, 1957. Since the running of the statute of limitations is suspended only while the Court has `control or custody' of the assets of the taxpayer, it is clear that there was no suspension afterat the latestMarch 4, 1957 plus six (6) months."
Defendant attaches to his opposing papers and relies upon the brief submitted in a Middle District of Florida action brought by the United States against Isadore and Murray Verlin, the other two members of the partnership, for relief paralleling that sought in the instant suit. The brief, without the citation of clear and controlling authority, contends somewhat indefinitely that the suspension endures for the period now urged upon this Court by Malkin.[9]
If we, arguendo, take October 7, 1957, the date Malkin thus supplies as the date of the distribution of the assets[10] and *617 compute from that date the six months additional as required under § 6503(b), the bankruptcy suspension of limitations would expire on April 7, 1958. Such extension when added to the others would render the commencement of suit timely as to all assessments other than the first one, which was filed on February 28, 1955. The assessment next filed, was filed June 8, 1955. That date is well within the period of limitations if such period were to be computed from the bankruptcy distribution date of October 7, 1957.
For the reasons set forth in footnote 9, however, the Court construes the statute as meaning that the signing of the order by the referee closing the estate is coterminous with the period during which the bankrupt's assets are either "in the control" or "in the custody" of the court. Hence, the action was timely begun even as to the earliest assessment filed.[11]
Defendant argues without citation of pertinent authority that "plaintiff is estopped from making any claim because it made no effort to collect any monies in the bankruptcy proceeding with which it was fully familiar and with respect to which it made assessments against the defendants." (Opp.Aff. p. 3) Defendant's brief and the Florida brief which it annexes and incorporates are less than illuminating in their support of such claim.
The bankruptcy file discloses, however, that on April 24, 1956, the government filed with the Bankruptcy Referee verified proofs of claim covering outstanding internal revenue taxes with statutory interest thereon, assessed on the records of the Brooklyn District Office of the I.R.S. against the partnership and its individual members; also Employment Tax FICA, Withholding Tax and Employment Tax FUTA against Arvee Stores, Inc.
On October 7, 1957, the referee after a number of intermediate proceedings had been conducted made an order of distribution which noted gross receipts by the trustee of $16,229.90 and the disbursement of various sums for administration expenses, leaving a balance of $9,349.99. Priority wage claims which by the Bankruptcy Act prime the government's tax claims, reduced this balance to $4,349.17. The order directed distribution of 5.104% of the priority tax claims against the estate. The chief such claim was that owing to the Director of Internal Revenue. The order directed payment to him of $3,607.82 upon the government's claim of $70,686.14 for FICA and Withholding, FUTA and Income Tax. The balance of $741.35 was distributed in an equal 5.104% dividend to the New York State Unemployment Insurance Fund upon its claim for unemployment insurance; to New York State Tax Commission for income tax and truck mileage tax; to the Receiver of Taxes and Assessments, Paterson, New Jersey, for personal property tax; and to the New York City Collector, Bureau of Excise Taxes, for sales and business taxes.
The Court will not undertake the difficult task of determining whether distributing the small balance of the estate to these nonfederal state and city agencies on a parity with the several United States imposts deprived the federal *618 fisc of a statutory priority. The referee's order became, through failure of any aggrieved party to appeal, the law of the case, and it is to be doubted that the government was called upon under penalty of the estoppel now urged by defendant to appeal from the referee's order in an attempt to recoup some or all of the $741 thus distributed to these other taxing authorities.
Submit judgment on notice for settlement and signature by the Court.
So ordered.
NOTES
[1] United States v. Rindskopf, 105 U.S. 418, 26 L.Ed. 1131 (1882); United States v. Molitor, 337 F.2d 917 (9th Cir. 1964); United States v. Strebler, 313 F.2d 402 (8th Cir. 1963); Melillo v. United States, 244 F.Supp. 323 (E.D. N.Y.1965).
[2] Fed.R.Civ.P. 3 declares a civil action is commenced by the filing of a complaint with the court. The summons, issued to the Marshal of the district for service, was served by "nailing and mailing" on July 31, 1969, at and to defendant Malkin's residence. The date of the filing of the complaint, rather than the date of service of process, marks the commencement of the action when the cause of action, as here, is federally based. Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959); Bomar v. Keyes, 162 F.2d 136 (2d Cir.), cert. denied, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947); Von Clemm v. Smith, 204 F. Supp. 110 (S.D.N.Y.1962).
[3] Includes the additional year of suspension provided in the stipulation.
[4] The stipulation relative to the March 5, 1963, offer would have extended the suspension of the statute of limitations to April 22, 1965, were it not for the fact that the stipulation as to the offer made August 25, 1964, duplicates that part of the period of the prior stipulation, which runs from August 25, 1964, to April 22, 1965. The calculation made in the text avoids such duplication by counting such overlapping period only once, a procedure consonant with I.R.S. policy.
[5] The Internal Revenue Code (1954), 26 U.S.C. § 6503(b), reads as follows:

"Assets of taxpayer in control or custody of court.The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter."
[6] A brief cannot be resorted to for the evidentiary matter which Fed.R.Civ.P. 56 authorizes and requires to be submitted. See cases cited in 6 J. Moore, Federal Practice, ¶ 56.11 [1.-8] and n. 8 (2d ed. 1966).
[7] The order of discharge was confirmed by a district court judge whose determination was upheld on appeal to the court of appeals by order dated May 13, 1958.
[8] Bankruptcy Act § 2a(8), 11 U.S.C. § 11(a) (8), confers jurisdiction upon courts of bankruptcy to "[c]lose estates, by approving the final accounts and discharging the trustees, whenever it appears that the estates have been fully administered or, if not fully administered, that the parties in interest will not furnish the indemnity necessary for the expenses of the proceeding or take the steps necessary for the administration of the estate;"
[9] The assets of a bankrupt come under the control of the court when the petition is filed, irrespective of whether they are reduced to possession at once or subjected to such control at a later date. May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870 (1924); Lazarus, Michel and Lazarus v. Prentice, 234 U.S. 263, 34 S.Ct. 851, 58 L.Ed. 1305 (1913); Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 32 S.Ct. 96, 56 L.Ed. 208 (1911). Bankruptcy Act § 70a, 11 U.S.C. § 110(a). See also United States v. McCann, 259 F.Supp. 632 (S.D.Cal.1966).

Under the predecessor statute, Internal Revenue Code (1939), ch. 1, § 274, 53 Stat. 86, provision was made in subd. (a) for immediate assessment upon adjudication of bankruptcy of any deficiency upon receipt of notice from the trustee in bankruptcy given to the Commissioner of Internal Revenue of his appointment. Thereupon "[c]laims for the deficiency and * * * interest," etc. "may be presented, for adjudication in accordance with law, to the court before which the bankruptcy * * * proceeding is pending."
Subd. (b) headed "Unpaid claims" provided that "[a]ny portion of the claim allowed in such bankruptcy * * * proceeding * * * may be collected by * * * proceeding in court within 6 years after termination of such proceeding. * * *"
The distribution of IRC § 274 [1939] includes IRC § 6873 [1954]. The 1954 enactment provides that "[a]ny portion of a claim for taxes allowed in * * * any proceeding under the Bankruptcy Act which is unpaid shall be paid by the taxpayer upon notice and demand from the Secretary or his delegate after the termination of such proceeding." [Italics supplied.] IRC § 6503(b) [1954] does not relate exclusively to bankruptcy and receivership proceedings as did its predecessor § 274. H.R.Rep.No.1337, 83d Cong., 2d Sess. (1954), gives the legislative history of § 6503 (3 U.S.Code Congressional and Administrative News, p. 4562 [1954]) in part as follows:
"Two changes from existing law are made in subsections (b) and (c) of this section. Subsection (b) provides that the period of limitation on collection after assessment shall be suspended for the period that the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States, or any State, and for 6 months thereafter. Existing income-tax law provides that in the case of bankruptcy or receivership, any portion of the claim allowed may be collected within 6 years after the termination of the proceedings. This subsection provides a uniform rule applicable to all taxes."
Inasmuch as the government is authorized to present its claim for adjudication to the Bankruptcy Court under 1954 IRC § 6871 and is authorized under 1954 IRC § 6873 to collect the portion of the taxes allowed in such proceeding "after the termination of such proceeding," it would appear a reasonable construction to hold that the entire term of the bankruptcy proceeding is excluded from the limiting period for suit. In a statutory sense the assets of the taxpayer are "in the control or custody of the court" from the date the petition is filed to the date the referee signs the order closing the estate.
[10] The bankruptcy file, however, discloses that some assets were in the trustee's hands as late as January 16, 1958. The trustee's check to the District Director of Internal Revenue in the sum of $3,607.82 was among those issued by the trustee under date of October 11, 1957, and possibly mailed the same day.
[11] If the Court did not so hold, it would not in any event have directed a dismissal of the entire complaint nor even of such earliest assessment. At most it would have ruled that triable issues exist with respect to the assessment in question. These issues would involve the following matters:

(a) The tolling of the statute of limitations by a partial payment made on account of the February 28, 1955, assessment.
(b) The extent to which interest accrued on the first assessment for a period not outlawed by the statute.
(c) The final date on which assets of the bankrupt were in the custody or control of the court.