**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Isadore VERLINSKY, a/k/a Isadore Verlin, and Murray Verlinsky, a/k/a Murray Verlin, Defendants-Appellants.**

**No. 71-2802
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

March 8, 1972.

Rehearing Denied May 31, 1972.

---

1. Indian Claims Commission Docket 80-A, pursuant to Indian Claims Commission Act, 25 U.S.C. § 70-70v.

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y., 431 F.2d 409, Part I (5th Cir. 1970).

George W. Ericksen, Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendants-appellants.

John L. Briggs, U. S. Atty., Bernard H. Dempsey, Jr., Tampa, Fla., Francis Dicello, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Scott P. Crampton, Gilbert E. Andrews, Asst. Attys. Gen., Fred B. Ugast, Acting Asst. Atty. Gen., Crombie J. D. Garrett, Gordon S. Gilman, Attys., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The alloyed tax-bankruptcy issue in this appeal requires that we construe a very narrow, highly technical, seldom invoked, slightly ambiguous—but here hotly contested—section of the Internal Revenue Code. Our interpretation constricts the reach of the aphorism of olde that "[t]he King's debtor dying, the King shall first be paid,"[1] by holding that before the sovereign claimed its privilege the statute of limitations had run. Indeed, the parties before us are agreed that but for the possible application of the tolling provisions of the Code section at issue in this case, the sovereign has no right at all to receive payment from these debtor-taxpayers of an amount admittedly owed.

The facts are not in dispute. We treat with them only briefly for most are of no aid to our disposition of the case.[2] The United States brought an action in the court below to reduce to judgment four separate tax assessments previously made against the taxpayers (Isadore Verlinsky a/k/a Isadore Verlin, and Murray Verlinsky a/k/a Murray Verlin). The taxpayers admitted that the assessments had been made and were true and correct with respect to dates and amounts assessed; that the alleged unpaid balance, plus interest, was due

---

1. Magna Carta, 1225, 9 Hen. 3, c. 18, cited in Plumb, Federal Tax Liens and Priorities in Bankruptcy—Recent Developments, 43 Ref.J. 37 (1969).

2. For a fully developed presentation of the facts, see United States v. Malkin, 317 F.Supp. 612 (E.D.N.Y.1970), a case dealing with precisely the same events and issues as the present case.

and owing; but contended that it was all barred by the six-year statute of limitations. 26 U.S.C.A. §§ 6501, 6502. The government replied that the addition of four extensions agreed to by the taxpayers, 26 U.S.C.A. § 6502(a) (2), along with a period during which the taxpayers' assets had been under the control of a bankruptcy court, 26 U.S.C.A. § 6503(b), together served to prolong the otherwise expired statute and brought the filing of the collection suit within the six-year limit. On rebuttal, the taxpayers further sharpened the controversy between the parties by conceding the four extensions, and thereby circumscribed the single issue now before this court to this: within the meaning of § 6503(b),[3] for what portion of the period during which a bankruptcy proceeding continues can it be said that assets of a taxpayer, who is eventually discharged as a bankrupt, are under the control or custody of the bankruptcy court.

From the filing of the petition in bankruptcy, to the discharging of the trustee and closing of the estate, approximately two and one-half years elapsed. Due solely to the fortuitous timing of those proceedings, as they related to the running of the statute, the parties are in complete agreement that: if § 6503(b) should operate to toll the statute only until the discharge of the bankrupt, then it had run on the date suit was filed; if, however, the statute should remain tolled by § 6503(b) as late as the final closing of the estate, then none of the assessments were barred and the entire 23,125.85 dollars sought was payable. The district judge concluded that the latter interpretation

was correct, and awarded summary judgment for the United States. We reverse.

Other than the *Malkin* decision, *supra* n. 2, which dealt with precisely the same question and facts that are now before us, there have been few cases [4] dealing with this section of the Code, and though both parties attempt to rely on them, we find none to be helpful. Doubtless though, Chief Judge Carter foresaw our question when in his *McCann* decision he observed that "[t]he section leaves much to be desired in definiteness and clarity, and various situations may be spelled out in which real problems would arise." This is what we have here.

Approaching, then, what is a novel question for this circuit, we are convinced that we should be first guided by the purpose Congress intended for § 6503(b), as that purpose is expressed in the legislative history. "The statute generally is suspended where assets are in the control or custody of a court because during this time they are not subject to administration collection procedures." [5] Quite obviously, the reason for the rule is that it would be unfair to allow the statute to run against the government's right to enforce a tax lien at a time when, even if the government did bring suit, it couldn't collect because it couldn't "get at" the taxpayer's assets. Other suspensions provided for in § 6503 are similarly designed. For example, the statute is tolled during any period the Secretary is prohibited from collecting by levy or proceeding in court, § 6503(a) (1), and likewise during any period that the taxpayer leaves

---

3. The complete text of § 6503(b) reads:
   (b) Assets of taxpayers in control or custody of court.—The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or

of the District of Columbia, and for 6 months thereafter.

4. *See* United States v. McCann, 259 F. Supp. 632 (S.D.Cal.1966) ; United States v. Cranor, 253 F.Supp. 600 (S.D.Ind. 1966).

5. S.Rep.No. 1708, 89th Cong., 2nd Sess. 24–25 (1966).

the country for more than six months. § 6503(c).

■ Directly put, we must decide at what point during the bankruptcy proceedings did assets which once belonged to the taxpayer cease to be *his assets*; for at that moment, all assets then belonging to the taxpayer would be subject to collection by the government, and the government would again be charged with the responsibility of pursuing that collection. We hold that that moment occurred when the taxpayer was discharged as a bankrupt. For upon discharge, the taxpayer gave up *all interest* in his erstwhile assets (title to which had actually passed to the trustee the day the petition was filed, 11 U.S.C.A. § 110(a)), and did so in exchange for release from all save non-dischargeable debts. 11 U.S.C.A. § 1(15). That day, the taxpayer became a new economic person, entitled to retain any non-bankruptcy assets he then held and such other assets as he thereafter could accumulate, without interference from the bankruptcy court.[6] As importantly, no later than that day, the taxpayers here were subject to assessment, suit, levy and execution for any debts not discharged, which included the tax assessments sought to be enforced by this action. Insofar as § 6503(b) relates to a bankruptcy proceeding, we refuse to interpret it in a fashion that would delay the hour when a man could finally divorce himself from his former holdings and debts. To do so would undermine the very purpose and policies of the Bankruptcy Act itself and jeopardize this circuit's commitment to letting the bankrupt "start afresh." Menier v. United States, 5th Cir., 405 F.2d 245, 249 (1968). We conclude that if the King wished to be paid, first or otherwise, then beginning on the day of discharge he had the obligation to bestir himself; for that is the day, economically speaking, the King's debtor died.

Though this settles the issue, we feel compelled to make specific wherein we disagree with the *Malkin* decision, a carefully considered opinion which the court below endorsed. The *Malkin* court interpreted § 6503(b) in light of another section of the code, 26 U.S.C.A. § 6873(a).[7]

The Judge reasoned that:

Inasmuch as the government is authorized to present its claim for adjudication to the Bankruptcy Court under 1954 IRC § 6871 and is authorized under 1954 IRC § 6873 to collect the portion of the taxes allowed in such proceeding 'after the termination of such proceeding,' it would appear a reasonable construction to hold that the entire term of the bankruptcy proceeding is excluded from the limiting period for suit. In a statutory sense the assets of the taxpayer are 'in the control or custody of the court' from the date the petition is filed to the date

---

6. It is true that upon the completion of administration and distribution of the bankrupt's estate, should there be any residue remaining it would be restored to the bankrupt for him to deal with as he pleases. 4A Collier on Bankruptcy, ¶ 70.07, at 94 (14th ed. 1971). However, such a remote possibility, which did not come to fruition in the case at bar, is not sufficient to upset our judgment that any such hypothetical residue ceased to be "the taxpayer's assets" on the day of discharge. From the day of discharge forward, *all assets* before the bankruptcy court were held in trust for the creditors of the taxpayer, and for the satisfaction of administrative costs. None of them belonged any longer to the taxpayer; they were all required of him as the price of his new economic freedom. In the unlikely event that he might later regain any portion of them, that portion would represent but an unexpected dividend of his bargain, and a *newly-acquired* asset.

7. That section provides:
   Any portion of a claim for taxes allowed in a receivership proceeding under the Bankruptcy Act which is unpaid shall be paid by the taxpayer upon notice and demand from the Secretary or his delegate after the termination of such proceeding.

the referee signs the order closing the estate. United States v. Malkin, *supra* 317 F.Supp. at 616, n. 9.

We cannot accept that construction of § 6503(b) for two reasons. First, the government in this case has not contended, and we can find no evidence in the record to show, that it had presented a claim *for these taxes* to the bankruptcy court. Failing in its burden of proving that it was thus prevented from pursuing payment from the taxpayer until "after the termination of such proceeding," it cannot now claim the protection of any relief § 6873 might otherwise afford. Second, even if the government had presented these claims to the bankruptcy court and was thereby precluded from demanding payment of unpaid claims until the proceedings had finally terminated, that would not persuade us to find that the *taxpayer's assets* were under the control of that court until that time. Though in that instance § 6503(b) would not suspend the running of the statute any longer than it did in the actual case, § 6503(a) (1), previously mentioned, would so do. For that section specifically provides that there will be a suspension of the running of the statute for any period "during which the Secretary or his delegate is prohibited from making the assessment or from collecting by levy or a proceeding in court . . . and for 60 days thereafter." However, finding that §§ 6873 and 6503(a) (1) are completely inapplicable to the case at bar, we decide that the statute began to run again from the date the taxpayers were discharged in bankruptcy. The parties are agreed that this determination bars the suit; therefore the judgment below must be

Reversed.

## ON PETITION FOR REHEARING

### PER CURIAM:

In its petition for rehearing, the government points out that the order of the referee granting the taxpayers' discharge in bankruptcy was appealed to and upheld by the Federal District Court for the Eastern District of New York,[1] and thereafter this decision was appealed to and affirmed by the United States Court of Appeals for the Second Circuit.[2] Based on these appeals, the argument is made that the discharge did not become final until 90 days after the Second Circuit's affirmance (the deadline for filing a petition for certiorari in the Supreme Court) and therefore the taxpayers actually retained assets under the control of the bankruptcy court until that date. It happens that the deadline for filing for certiorari came two and one-half years after the initial discharge, and were the statute of limitations tolled until that late date, all taxes sued for here would be collectible.

■■ This added contention is without merit. The records of the district court and court of appeals here involved, which we judicially notice, disclose that the referee suspended his discharge order until such time as it might be ruled on by the district judge. However, no further suspension, stay, or writ of supersedeas was granted by any court. The judgment by which a court ends a cause does not hang in limbo pending appeal. If not stayed or otherwise suspended, it becomes final 10 days after issuance. Fed.R.Civ.P. 62. *See generally* 9 Moore's Federal Practice ¶¶ 62.03–62.09 (2d ed. 1970). This rule effects a particularly important policy in the bankruptcy area by insuring that the economic lives of bankrupts and creditors alike not be interrupted during appellate procedures. Wilson v. Alliance Life Ins. Co., 108 F.2d 150 (5th Cir. 1939); Chicago Tunnel Terminal Corp. v. Rutland Transit Co., 255 F.2d 316 (7th Cir. 1958). *See* 2 Collier on Bankruptcy ¶ 25.12 (14th ed. 1971).

■ Thus 10 days after the district judge affirmed the referee's order, the

---

1. In re Verlin, 148 F.Supp. 660 (E.D.N.Y. 1957).

2. Fishman v. Verlin, 255 F.2d 682 (2d Cir. 1958).

discharge became final and the statute of limitations began to run. As a factual matter in the context of the present case, the referee's suspension extended by approximately four months the period during which the government might have brought suit; such an extension is far too short to aid the government's cause here. It in no way alters our original decision that the present collection attempt is now time-barred.

The other points raised are without merit, and the petition is hereby

Denied.