Joseph DiVERNIERO, et al.

v.

Frank MURPHY, et al.

No. N–81–513(EBB).

United States District Court,
D. Connecticut.

April 3, 1986.

---

Sue L. Wise, Williams & Wise, New Haven, Conn., for plaintiffs.

Martin S. Echter, Deputy Corp. Counsel, Karen S. Nash, Deputy Corp. Counsel, New Haven, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ELLEN B. BURNS, District Judge.

Plaintiffs filed this three-count complaint on November 6, 1981. The first two counts allege that the individual defendants violated plaintiffs' constitutional rights by using excessive force while effectuating unlawful arrests. Recovery is sought pursuant to 42 U.S.C. § 1983 ("section 1983"). The third count alleges that the Ogden Food Service Corporation ("Ogden"), the City of New Haven (the "City"), and the New Haven Coliseum Authority (the "Authority") conspired in restraint of trade in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. The instant motion was filed on behalf of all of the defendants except Ogden.

### I. *Facts*

In filing this motion for summary judgment, the defendants have not attacked the material factual allegations set forth in the complaint. Rather, the defendants have chosen to supplement those assertions with evidence related to the timing of the filing and service of the complaint. Therefore, for the purpose of deciding this motion, the court will accept the facts set forth in the complaint as true. *Patrick v. LeFevre*, 745 F.2d 153, 158 (2d Cir.1984) (burden on moving party to show no disputed factual issues.)

On November 8, 1978, plaintiffs were conducting business on the premises of Ray's Elmco gas station, a place of business owned by one of the plaintiffs. That evening a rock concert was being held nearby at the Veterans' Memorial Coliseum (the "Coliseum"). The plaintiffs often augmented their gas station business by selling parking spaces, food, beverages, and novelty items at times of Coliseum events.

The complaint alleges that on November 8, 1978, two of the individual defendants were off-duty from their normal police work and had been hired by Ogden, or the City, or the Authority, to check vendor permits in the vicinity of the Coliseum. These officers attempted to arrest an unknown tee-shirt vendor in the vicinity of the plaintiffs' place of business. Apparently the plaintiffs sought to intercede on behalf of the unknown vendor. A scuffle ensued in which plaintiffs claim they were brutally beaten, while the remaining individual defendants looked on passively. The plaintiffs were arrested for assault and interfering with a police officer. Both were acquitted following a jury trial.

In addition to the above-described incident, the complaint alleges that Ogden, the Authority, and the City conspired to hire off-duty police officers to harass vendors in the vicinity of the Coliseum. Ogden had the exclusive right to sell food, beverages, and novelties on the premises of the Coliseum. The alleged purpose of the conspiracy was to protect Ogden and the Authority from competition from street vendors. Plaintiffs claim that the harassment by off-duty police officers resulted in the abandonment of their business of selling food, beverages, and novelties to Coliseum patrons.

The instant complaint was filed with the clerk on November 6, 1981, within three years from the incident complained of in Counts One and Two. However, the complaint was not delivered to the United States Marshal for service until November 9, 1981. The complaint was served by the marshal upon all defendants on that date.

The defendants claim that the first two counts are barred by the statute of limitations. The City also asserts that the first two counts fail to state a claim against it under the principles set forth in *Monell v. City of New York Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Finally, the City and the Authority claim to be immune from anti-trust liability under the state action exemption. During the pendency of this motion the Supreme Court issued a ruling in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). This court ordered the parties to submit supplemental briefs on the effect of *Wilson* on plaintiffs' section 1983 claims.

## II. *Applicable Limitations Period*

In *Wilson v. Garcia, supra,* the court sought to correct the "conflict, confusion, and uncertainty concerning the appropriate statute of limitations to apply to" section 1983 causes of action. *Id.* 105 S.Ct. at 1941. The court recognized the long standing rule that federal courts must seek out and apply the most analogous limitations period of the forum state to section 1983 actions, so long as such period is not inconsistent with federal law. *Id.* However, in determining the most analogous state limitations period it is necessary to characterize a section 1983 cause of action by federal rather than state standards. *Id.* at 1943.

The *Wilson* court determined that the most analogous state statute of limitations is the one applicable to tort actions for the recovery of damages for personal injuries. *Id.* at 1947. This determination was based upon an exhaustive analysis of the nature of the cause of action Congress intended to create in section 1983. The legislative history of the Civil Rights Act of 1871 indicated that Congress was concerned with state officials abusing the authority of their office to deprive individuals of rights secured under federal law. *Id.* The Court determined that these protected rights are essentially personal in nature, and would be most appropriately governed by a limitations period applicable to personal injuries. *Id.*

This court must now apply *Wilson* to determine the Connecticut statute of limitations most analogous to a section 1983 cause of action. Prior to *Wilson* it had been assumed that the three-year limitation of Conn.Gen.Stat. § 52–577 (Action Founded Upon Tort) applied to section 1983 actions brought in Connecticut.[1] *Williams v. Walsh,* 558 F.2d 667, 670 (2d Cir.1977); *Members of Bridgeport Housing Authority Police Force v. City of Bridgeport,* 85 F.R.D. 624, 637 (D.Conn.1980). The defendants argue that *Wilson* requires a reconsideration of these earlier precedents and urges the court to apply the two-year limitation found in Conn.Gen.Stat. § 52–584 (Action For Injury to Person or Property).[2]

Defendants' argument favoring application of the two-year limitation of § 52–584 has some facial appeal. Unlike § 52–577, the two-year limitation specifically mentions "injuries to the person," language which was employed by the Supreme Court in *Wilson.* However, § 52–584 goes on to

---

1.  § 52–577. **Action founded upon a tort**
    No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.

2.  § 52–584. **Limitation of action for injury to person or property**
    No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physi-

cian, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such actions are finally closed.

limit its application to injuries "caused by negligence or by reckless or wanton misconduct...." The Connecticut Supreme Court has determined that this limiting language makes § 52–584 inapplicable to intentionally inflicted personal injuries. *Altieri v. Colasso*, 168 Conn. 329, 332, 362 A.2d 798 (1975). Such intentional torts are therefore governed by the three-year limit found in the more general provision, § 52–577. *Id. See also Shinabarger v. United Aircraft*, 262 F.Supp. 52, 58 (D.Conn.1966), *aff'd in part and rev'd in part on other grounds*, 381 F.2d 808 (2d Cir.1967). *Cf. Orticelli v. Powers*, 197 Conn. 9, 16, 495 A.2d 1023 (1985) (applying three-year limitation to section 1983 actions brought in Connecticut state courts).

Because Connecticut has two statutes of limitations applicable to personal injury torts, it must be determined whether a cause of action brought under section 1983 is more analogous to an intentional tort or to one based upon negligence or recklessness. Other courts, when directly faced with this question, have determined that the limitations period applicable to intentional torts governs section 1983 actions. *Weber v. Amendola*, Civ. No. N–84–521, slip. op. (Nov. 26, 1985) (Cabranes, J.); *Gates v. Spinks*, 771 F.2d 916 (5th Cir. 1985); *Jones v. Preuit & Mauldin*, 763 F.2d 1250 (11th Cir.1985); *Cook v. City of Minneapolis*, 617 F.Supp. 461 (D.Minn. 1985). *But see Belcha v. DeBenedet*, Civ. No. N–85–212, slip. op. (D.Conn. Feb. 4, 1986) (Dorsey, J.) (assuming two-year limit applies but finding that *Wilson* should not be given retroactive application if claim would have been timely filed under pre-*Wilson* law).

The view that section 1983 causes of action are analogous to intentional torts finds support in the recent Supreme Court decision in *Daniels v. Williams*, — U.S. —, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Prior to *Daniels*, the Court had held that a negligent deprivation of a constitutionally protected interest could give rise to a section 1983 cause of action. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The *Daniels* court overruled this aspect of *Parratt*. Noting

that the Due Process Clause of the Fourteenth Amendment protected individuals from abuses of governmental authority, the court refused to trivialize these protections by allowing mere negligence to support a section 1983 cause of action. 106 S.Ct. at 664–67.

The *Daniels* court left open the question of whether something less than intentional conduct might give rise to a section 1983 cause of action. *Id.* at 667, n. 3. *Cf. Whitely v. Albers*, — U.S. —, —, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) (implying "deliberate indifference" standard applicable to Eighth Amendment cases requires conduct so dangerous that knowledge of risk of injury may be inferred). However, even if something less than intent is sufficient to state a section 1983 claim, *Daniels* indicates that the offending conduct must be sufficiently egregious to amount to an abuse of power. Such an abuse of power is more analogous to an intentional tort than one based upon negligence or recklessness. *Wilson* instructs that only one limitations period may be applied to all section 1983 claims brought within a given state, regardless of the particular acts alleged. 105 S.Ct. at 1947. Accordingly, this court holds that the three-year limitations period of Conn. Gen.Stat. § 52–577 is applicable to section 1983 suits brought in Connecticut.

### III. *Initiation of this Suit*

Defendants have argued that, even if a three-year limitations period is applicable to this suit, it was not initiated within three years from the accrual of the cause of action. Defendants concede that the suit was filed with the clerk within three years of the incident complained of, but argue that it was not initiated for purposes of the statute of limitations until the complaint was delivered to the marshal for service. *See* Conn.Gen.Stat. §§ 52–45a (civil action commenced by legal process); § 52–593a (cause of action not lost if process is delivered to authorized officer within limitations period and served within 15 days thereafter). Because the complaint was not de-

livered to the marshal for service within the limitations period, defendants argue that the action is barred by the statute of limitations.

In support of their position the defendants cite to *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). *Walker* involved a suit based upon diversity jurisdiction in the Western District of Oklahoma. Although the suit was filed within the applicable Oklahoma statute of limitations, the complaint was not served until several months after the limitations period had run. Oklahoma law required service of the complaint within the limitations period. The Court reaffirmed its earlier holding in *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), which had determined that *Erie R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), required application of the state rule governing the commencement of a suit for statute of limitations purposes. The Court observed that Rule 3, F.R.C.P., provides that a civil action is commenced by filing a complaint with the clerk. However, to the extent that Rule 3 conflicts with a state statute of limitations, the Court held that the state limitations period must prevail. 446 U.S. at 751, 100 S.Ct. at 1985. The Court took pains to note that it was not addressing the role played by Rule 3 with respect to a cause of action based upon federal law. *Id.*, n. 11.[3]

There appears to be little justification for holding that the filing of a complaint with the clerk does not mark the commencement of a cause of action brought under section 1983. Defendants rely on 42 U.S.C. § 1988 ("section 1988") which provides the basis for applying state statutes of limitations to federal civil rights actions. That section provides, in pertinent part:

> in all cases where [federal laws] are not adapted to the [protection and vindication of civil rights], or are deficient in the provisions necessary to furnish suitable remedies ... the common law, as modified and changed by the constitution and statutes of the [forum] state ..., so far as the same is not inconsistent with the constitution and laws of the United States, shall be extended to and govern [federal] courts in the trial and disposition of the cause....

■ The language of section 1988 provides an answer to defendants' argument. Federal courts only employ state laws in furnishing a remedy for civil rights violations when there is a deficiency in federal law. *Wilson v. Garcia, supra* 105 S.Ct. at 1943 (resort to state law should not be undertaken until principles of federal law are exhausted). *Cf. Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980) (although law of forum determines limitation period in civil rights case, federal law determines when cause of action accrues). In a number of cases state tolling rules have been applied to applicable state limitations periods when federal law was deficient. *See e.g. Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (no state tolling as a result of filing of a related case in state court); *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (application of state tolling provisions related to death of plaintiff); *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (addressing state tolling provisions related to filing administrative complaint). In all of these

---

**3.** The Court noted that *Ragan* had distinguished between a case brought under federal law and a case governed by state law. *Id.* See 337 U.S. at 533, 69 S.Ct. at 1234. *Ragan* cited to a Second Circuit case authored by Judge Learned Hand which held that a cause of action brought under the Civil Rights Act of 1871, then codified as section 43 of Title 8 of the United States Code, was initiated upon the filing of the complaint. *Bomar v. Keyes*, 162 F.2d 136, 140 (2d Cir.1947). Nothing in *Ragan* or *Walker* affects the result reached in *Bomar*, which appears to be the controlling law in this circuit. *See Cohen v. Bd. of Ed.*, 536 F.Supp. 486, 495 (S.D.N.Y.) (*Bomar* still controlling in civil rights cases.). *Cf. United States v. Malkin*, 317 F.Supp. 612, 613, n. 2 (E.D.N.Y.1970) (citing *Bomar* for proposition that date of filing complaint rather than date of service marks commencement of action founded upon federal law and governed by federal statute of limitations).

cases there was no federal law responsive to the tolling question presented to the federal court. However, Rule 3, promulgated pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, does provide federal law sufficient to determine when a suit brought under section 1983 is commenced for statute of limitations purposes. Because federal law is not deficient on this subject, resort need not be made to state law. *See Cohen v. Board of Education*, 536 F.Supp. 486, 495 (S.D.N.Y.1982), for a similar analysis. Therefore, the filing of plaintiffs' complaint on November 6, 1982, was sufficient to commence this action within the limitations period.[4]

### IV. *Liability of the City for Civil Rights Violations*[5]

■ The complaint names the City as a defendant in Counts One and Two. It is now well established that a municipality cannot be held liable for civil rights violations under a theory of *respondeat superior* for the acts of its employees. *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to satisfy *Monell*, a plaintiff must plead and prove facts sufficient to show that the alleged unconstitutional acts were pursuant to a policy or custom of the municipality. *Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Thurman v. Torrington*, 595 F.Supp. 1521, 1530 (D.Conn.1984). The first and second counts of the complaint make no allegation that the individual police officers improperly arrested or severely brutalized plaintiffs pursuant to a City policy or custom. Plain-

tiffs have also not addressed the *Monell* issue in either of their memoranda submitted in opposition to defendants' motion. Therefore it is appropriate that the City be dismissed as a defendant with respect to Counts One and Two.

### V. *Municipal Liability on Anti-Trust Claim*

■ The third count of the complaint alleges that Ogden, the City, and the Authority conspired to hire off-duty police officers "to harass vendors in the area surrounding the Coliseum in order to coerce, force, or require said vendors to abandon their business enterprises in the area of the Coliseum." Complaint, Count Three, ¶ 13. The City and the Authority claim that they are immune from liability under the anti-trust laws under the "state action exemption" set forth in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

In *Parker* the Supreme Court determined that Congress did not intend federal anti-trust laws to preclude state regulatory activities that had an anti-competitive effect. *Id.* at 350–51, 63 S.Ct. at 313–14. In *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), a plurality of the Court decided that a municipality may be protected by the *Parker* doctrine if the municipality was acting "pursuant to state policy to displace competition with regulation or monopoly public service." 435 U.S. at 413, 98 S.Ct. at 1137. However, in *Community Communications Co. v. City of Boulder*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), the Supreme Court refused to find

---

**4.** It is noteworthy that the Federal Rules of Civil Procedure, as they existed in 1981, provided that the clerk shall deliver the summons and complaint to the marshal for service. Rule 4(a), F.R.C.P. (1981). Once the complaint was filed, the matter of service of the complaint was out of the plaintiff's hands. This rule was modified in 1983 to provide that the clerk shall deliver the filed complaint to the plaintiff or his attorney "who shall be responsible for service." Rule 4(a), F.R.C.P. (1983). *See* 2 Moore's Federal Practice, 4–40. Prior to the 1983 amendment, it appears that the clerk of the court was the agent of the marshal for purposes of accepting delivery of the complaint for service. There-

fore, even if state rules applied to determine when the action was commenced, the filing of the complaint on November 6, 1981, would meet the requirement of Conn.Gen.Stat. § 52–593a that the complaint be delivered to an authorized officer for service within the limitations period.

**5.** Because the parties have not submitted matters outside the pleadings with respect to the City's liability under Counts One and Two, or with respect to the liability of the City and the Authority (the "Municipal Defendants") under Count Three, the court will treat these aspects of the motion pursuant to Rule 12(b), F.R.C.P.

that a municipality was exempt from federal anti-trust liability when it acted pursuant to a general "home rule" amendment to the state constitution in regulating cable television systems. The Court noted in *Community Communications* that the general home rule amendment was not a "clear articulation" of a state policy to permit anticompetitive activities by municipalities. *Id.* at 55, 102 S.Ct. at 842.

In *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Supreme Court attempted to clarify any ambiguities that existed following *City of Lafayette* and *Community Communications.* The Court stated that the state grant of authority did not require a clear expression by the legislature "that it intends for the delegated action to have anti-competitive effects." 105 S.Ct. at 1719. It is sufficient if the "anticompetitive effects logically would result from [the] broad authority to regulate." *Id.* at 1717. The Court also noted that it was not necessary for the state directly to oversee the municipality's conduct, or for the state to "compel" the municipality to engage in such conduct, for the *Parker* doctrine to apply. *Id.* at 1718.

If the plaintiffs had simply alleged that the municipal defendants violated federal anti-trust laws by giving Ogden exclusive concessionary rights within the Coliseum, the holding of *Town of Hallie* would immunize the defendants. Such a grant of exclusive rights is a foreseeable anticompetitive effect of the legislative grant of authority to the municipal defendants to enter into contracts related to the use and operation of the Coliseum. *See* Conn.Gen. Stat. §§ 7–130b, 7–130d, 7–130f, 7–130i. Similarly, the City would be immune had plaintiffs simply alleged that the City violated federal anti-trust laws by enforcing its vendor license ordinances. The anticompetitive effect of such licensing laws is a logical result of the legislative grant of authority to regulate the business of peddlers. Conn.Gen.Stat. § 7–148(7)(H)(iv). However, the complaint alleges conduct of the municipal defendants that goes beyond these legislatively authorized activities. To the extent that the municipal defendants may have conspired to inhibit lawful business activities by harassing legitimate vendors in the area of the Coliseum, they are subject to federal anti-trust laws. Nothing in the legislative grants of authority to municipal defendants contemplates this kind of anti-competitive activity.

The municipal defendants' motion to dismiss Count Three must be denied at this time. However, neither party has addressed the effect of the Local Government Antitrust Act of 1984 (the "Act"), codified at 15 U.S.C. §§ 34–36. The Act provides that local governments shall be immune from payment of damages, costs, or attorneys' fees for anti-trust violations. 15 U.S.C. § 35(a). The Act is not applicable to cases commenced prior to September 24, 1984, unless "it would be inequitable not to apply [the Act] to a pending case." 15 U.S.C. § 35(b). Because application of the Act to this case has not been argued, the court will deny the motion to dismiss Count Three without prejudice.

## VI. *Conclusion*

The defendants' motion for summary judgment with respect to Counts One and Two is denied. The motion to dismiss Count Three is denied without prejudice. The motion to dismiss Counts One and Two with respect to the City of New Haven is granted.

SO ORDERED.