**SENTRY CORPORATION and SNE Corporation, Plaintiffs-Appellants,**

v.

**Ethel R. HARRIS, as Trustee Under Trust Agreement dated March 1, 1973, et al., Defendants-Appellees.**

**No. 85–2824.**

United States Court of Appeals,
Seventh Circuit.

Argued May 28, 1986.

Decided Sept. 16, 1986.

Rehearing and Rehearing En Banc
Denied Nov. 12, 1986.

John A. Rothstein, Quarles & Brady, Milwaukee, Wis., for plaintiffs-appellants.

Laura A. Kastar, Jenner & Block, Chicago, Ill., for defendants-appellees.

Before CUDAHY and RIPPLE, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

This is yet another in a long line of cases in which the courts have sought with enormous difficulty to unravel the complexities created by Congress' failure to provide statutes of limitations to govern all federal causes of action. In this case the plaintiffs appeal from an order of the district court dismissing their federal securities claim as barred by the applicable state statute of limitations. The district judge held that when a federal court borrows a state statute of limitations to apply to a federal cause of action it must also borrow those provisions relating to when the action is commenced and when service of process must be effectuated to toll the statute of limitations. We affirm in part, reverse in part, and remand for further proceedings.

I

The facts of this case, relevant to the issue presented on appeal, are not in dispute. The plaintiffs, Sentry Corporation and SNE Corporation, brought a federal 10b–5 securities claim, alleging that the defendants, Ethel R. Harris, as Trustee under Trust Agreement dated March 1, 1973, et al., had defrauded them in the sale of the stock of the Harris-Crestline Corporation. To that federal claim, the plaintiffs appended various state law claims. The plaintiffs' cause of action accrued on October 30, 1981, the date on which the stock purchase agreement containing the alleged misrepresentations was executed. The plaintiffs filed their complaint on October 26, 1984 and served the defendants with the complaint on January 30, 1985, ninety days later.

The defendants moved to dismiss the action on the ground, *inter alia,* that it was barred by the statute of limitations. Below both parties agreed that 10b–5 actions,

which do not have their own federal limitations period, are governed by the most analogous state statute of limitations. *See Sperry v. Barggren,* 523 F.2d 708, 710 n. 1 (7th Cir.1975).[1] Both parties also agreed that Wis.Stat. § 551.59(5) (1983), which was in effect at the time of the allegedly fraudulent transaction and which provided for a limitations period of three years, governed. The parties disagreed, however, whether state or federal law governed the questions of when the action was "commenced" for purposes of the statute of limitations and if and when service of process had to be completed in order to toll the statute of limitations.

Relying on recent Supreme Court civil rights cases, *see Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Chardon v. Fumero Soto,* 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983); *Board of Regents of University of New York v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), and a diversity case, *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), the district judge held that the issue of when the action was "commenced" should be governed by state law. She observed that under Wisconsin law, an action is "commenced" when the complaint is filed and the defendant is served with a copy of the complaint. *See* Wis.Stat. § 893.02 (1983). The district judge also observed that the plaintiff is given some leeway if he fails to serve the complaint within the applicable limitations period, here three years. If the defendant

is served with a copy of the complaint within sixty days of filing, even though service occurs outside the limitations period, the action is deemed "commenced" as of the date of filing. Wis.Stat. § 801.02 (1983). The district judge concluded that this service limitation was an "integral part" of the Wisconsin statute of limitations period. She noted that in this case the complaint was filed four days before the expiration of the three-year limitations period, but service was not made until January 30, 1985, thirty days after the sixty-day grace period had expired. She held that the action was therefore not "commenced" under Wisconsin law until January 30, 1985, more than three years after the cause of action had accrued, and it was therefore barred. The district judge also dismissed the pendent claims under *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which holds that dismissal of the federal question claim prior to any lengthy pretrial proceedings requires, absent extraordinary circumstances, dismissal of all pendent claims.

## II

■ Our analysis of the present case begins with two preliminary observations. First, in cases involving federal rights for which Congress has expressly provided a federal limitations period, Fed.R.Civ.P. 3 directly governs the issue of when an action is commenced for statute of limitations purposes, unless Congress has expressly provided otherwise. *See generally* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1056, at 177 (1969) and cases

---

1. Several commentators have argued that such an action should be governed by one of the express limitations periods in the Securities and Exchange Act because a 10b–5 action is judicially-implied, not expressly provided for by Congress. *See, e.g.,* Note, *A Cry for Help: The Ninth Circuit and the Statute of Limitations in Rule 10b–5 Actions,* 22 UCLA L.Rev. 947, 950–51 (1975) and authorities cited therein. They argue that as a result, it cannot be assumed that the congressional failure to set a limitations period means that Congress intended the courts to look to state law. *Cf. DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151,

103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (judicially-implied cause of action subject to analogous federal, not state, limitations period). In addition, they argue that because Congress did provide two express limitations periods in the Act, it can be assumed that Congress would have intended those provisions to cover all implied causes of action arising under the Securities and Exchange Act. Finally, they argue that a 10b–5 implied cause of action is more analogous to private rights of action expressly provided for in the Act than to state securities claims, and therefore the Act's express limitations period should govern.

cited therein. The Supreme Court has held that when a federal rule (promulgated by the Court pursuant to the Rules Enabling Act) directly applies, its validity is to be tested under the Rules Enabling Act, 28 U.S.C. § 2072 (1982).[2] *Hanna v. Plumer*, 380 U.S. 460, 463–64, 470–71, 85 S.Ct. 1136, 1139–40, 1143–44, 14 L.Ed.2d 8 (1965). The test to be applied is whether the rule "abridge[s], enlarge[s] or modif[ies] any substantive right." This test applies in both diversity and non-diversity actions.[3] *See, e.g., Chesny v. Marek*, 720 F.2d 474, 479–80 (7th Cir.1983), *rev'd on other grounds*, —— U.S. ——, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985); *see also* Ely, *The Irrepressible Myth of Erie*, 87 Harv.L.Rev. 693, 737 n. 226 (1974). To date, no court has ruled that, in the context of non-diversity cases governed by express federal limitations periods, Fed.R.Civ.P. 3 violates the Rules Enabling Act, 28 U.S.C. § 2072, and hence cannot be applied.[4]

■ Second, in cases involving a federal right for which there is no express limitations period, federal courts ordinarily borrow state limitations periods. They are not compelled to do so, however. Although the Supreme Court early on appeared to adhere to the view that the Rules of Decisions Act, 28 U.S.C. § 1652 (1982),[5] compelled the application of a state law (and therefore state limitations periods) where federal law was silent, *see McCluny v. Silliman*, 28 U.S. 270, 277, 3 Pet 270, 277, 7 L.Ed. 676 (1830), the Court subsequently modified its view. *See, e.g., Holmberg v. Armbrecht*, 327 U.S. 392, 394, 66 S.Ct. 582, 583, 90 L.Ed. 743 (1946); *Board of County Commissioners v. United States*, 308 U.S. 343, 347–50, 60 S.Ct. 285, 287–88, 84 L.Ed. 313 (1939); *Campbell v. Haverhill*, 155 U.S. 610, 614–15, 15 S.Ct. 217, 219–20, 39 L.Ed. 280 (1895). In each of those cases, the Court made clear that the Rules of Decision Act did not compel the application of state law in federal causes of action, even where federal law was silent. The Court recently reaffirmed that conclusion in *Wilson*, 471 U.S. at 269, 270, 105 S.Ct. at 1944 & n. 22; *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 159–60 n. 13, 103 S.Ct. 2281, 2287–88 n. 13, 76 L.Ed.2d 476 (1983); *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977); *Johnson*, 421 U.S. at 465, 95 S.Ct. at 1722, noting that there is only a presumption in favor of the application of state law and that the federal courts still retain discretion to fill gaps

2. The Rules Enabling Act provides:

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure of the district courts and courts of appeals of the United States in civil actions, including admiralty and maritime cases, and appeals therein, and the practice and procedure in proceedings for the review by the courts of appeals of decisions of the Tax Court of the United States and for the judicial review or enforcement of orders of administrative agencies, boards, commissions, and officers.

\* \* \* \* \* \*

Such rules shall not abridge, enlarge, or modify any substantive right and shall preserve the right of trial by jury as at common law and as declared by the Seventh Amendment to the Constitution.

28 U.S.C. § 2072 (1982).

3. *Hanna* also calls for consideration of whether the rule, if applied, would be beyond the power of Congress under the Constitution. It is too obvious to merit extended discussion that Congress could constitutionally prescribe when federal causes of action are deemed commenced for purposes of the statute of limitations.

4. In *Bomar v. Keyes*, 162 F.2d 136, 141 (2d Cir.1947), *cert. denied*, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1948), the court, speaking through Judge Learned Hand, found that in cases such as the one at bar, Fed.R.Civ.P. 3 does not violate the Rules Enabling Act. *See also DiVerniero v. Murphy*, 635 F.Supp. 1531 (D.Conn.1986) (implicitly reaching the same result) ("However, Rule 3 promulgated pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, does provide federal law sufficient to determine when a suit brought under section 1983 is commenced for statute of limitations purposes.").

5. The Rules of Decision Act provides:

The laws of the several states except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

28 U.S.C. § 1652 (1982).

in federal statutory law by formulating federal common law or by looking to other analogous law.[6] *See also American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 556 n. 27, 94 S.Ct. 756, 767 n. 27, 38 L.Ed.2d 713 (1974). It is beyond cavil, however, that state law is only applied when there is no valid federal law directly governing the issue. *See, e.g., Hanna,* 380 U.S. at 465, 85 S.Ct. at 1140. And even when state law is applied, it becomes a part of the federal law and retains no independent significance. *See Wilson,* 471 U.S. at 269, 105 S.Ct. at 1943.

The question presented for review in the instant case then is whether Fed.R.Civ.P. 3, which directly controls when an action is commenced in cases involving federal rights expressly governed by federal limitations periods, directly controls when an action such as the one at bar is commenced. If it does control this issue, it must be

applied notwithstanding contrary state law, unless, of course, it violates the Rules Enabling Act's prohibition against rules that would modify, abridge, or enlarge any substantive rights of the parties.

■ We now hold that Fed.R.Civ.P. 3 governs when cases such as the one at bar are commenced for statute of limitations purposes and that this rule is a valid exercise of the Supreme Court's rulemaking authority.[7] We therefore find that it should be applied regardless of whether Wisconsin's service requirement is an integral provision of Wisconsin's statute of limitations.

There does not appear to be much dispute that Fed.R.Civ.P. 3 "passes muster" under the Rules Enabling Act. As the Court in *Hanna* observed:

> [T]he test must be whether a rule really regulates procedure, ... the judicial

6. When the gap in the federal statutory law is the lack of an express limitations period, the federal courts traditionally have not exercised their discretion to formulate a limitations period. *See DelCostello,* 462 U.S. at 151, 103 S.Ct. at 2281 (Even though the Court expressly found that state limitations periods unduly burden federal rights, it did not formulate a federal limitations period; rather, it drew on express limitations periods found in another analogous federal statute.). The reason for this is that the courts have recognized that legislatures, not courts, are the appropriate formulators of arbitrary rules such as limitations periods. *See, e.g., Campbell v. Haverhill,* 155 U.S. 610, 155 S.Ct. 217, 39 L.Ed. 280 (1895); *see also* Note, *A Limitation on Actions,* 68 Colum.L.Rev. 763, 771 (1981); Note, *Limitation Borrowing in Federal Courts,* 77 Mich.L.Rev. 1127, 1131 (1979).

As one commentator has observed, however, the courts are "less hesitant to create uniform federal rules governing subsidiary issues related to the process of applying state statutes of limitations, such as tolling, characterization of the cause of action and definition of the time of accrual." Special Project, *Time Bars in Specialized Federal Common Law: Federal Rights of Action and State Statutes of Limitations,* 65 Cornell L.Rev. 1011, 1055 (1980); *accord* Note, *Federal Statutes Without Limitations Provisions,* 53 Colum.L.Rev. 68, 72 (1953) ("The failure of a federal statute to provide a limitations period is difficult to remedy by judicial action, but the courts are well situated to write federal law on the subsidiary issues involved in the limitation of actions.").

7. In so doing, we need not reach the plaintiffs' other argument that Fed.R.Civ.P. 4(j) directly

controls when service of process must be effectuated to toll the limitations period. The plaintiffs clearly served the complaint within the 120–day period and thus the issue does not arise whether a plaintiff's failure to comply with both Fed.R.Civ.P. 3 and 4(j) should result in a dismissal for untimeliness.

We merely acknowledge that in federal question cases governed by express limitations periods, Fed.R.Civ.P. 4(j) might operate as a tolling provision. *See, e.g.,* Siegel, *Supplementary Practice Commentaries on Rule 4,* 28 U.S.C.A. Fed.R. Civ.P. 1 to 11, at C4–37 (West Supp.1986); Walker, *1983 Amendments to Federal Rules of Civil Procedure 4—Process Jurisdiction and Erie Principles Revisited,* 19 Wake Forest L.Rev. 957, 976–77 (1983). *But see* 2 J. Moore & J. Luca, *Moore's Federal Practice,* ¶ 4.46 at 4–574 (2d ed. 1986). It may not, however, operate as a tolling provision in cases such as the one at bar. *Compare* Siegel, *supra,* at C4–37, C4–31, *with* Walker, *supra,* at 978, and the Supreme Court has apparently taken the view that at least in diversity actions, Fed.R.Civ.P. 4(j) does not operate as a tolling provision. *Schiavone v. Fortune,* —— U.S. ——, ——, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986); *see also Morse v. Elmira Country Club,* 752 F.2d 35 (2d Cir.1984); Siegel, *supra,* at C4–37. We further observe that the application of Fed.R.Civ.P. 4(j) to a case such as the one at bar would not have to meet the requirements of the Rules Enabling Act because the rule was passed by Congress, not the Supreme Court. *Flaminio v. Honda Motor Co.,* 733 F.2d 463, 470 (7th Cir.1984).

process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.

*Id.,* 380 U.S. at 464, 85 S.Ct. at 1140 (quoting *Sibbach v. Wilson & Co.,* 312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941)); *see also Marek v. Chesny,* —— U.S. ——, 105 S.Ct. 3012, 3031, 87 L.Ed.2d 1 (1985) (Brennan, J., dissenting). When, as here, we are not "deal[ing] with a case in which the limitation is annexed as a condition to the very right of action created, ... the statute of limitations is treated as going to the remedy." *Bomar v. Keyes,* 162 F.2d 136, 140–41 (2d Cir.1947), *cert. denied,* 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947). The substantive federal right therefore is not abridged by tolling the limitations period upon filing of the complaint because tolling in this case merely affects the remedy,[8] and is not "designed to achieve a substantive objective—such as compliance with the ... [securities laws.]" *Marek,* —— U.S. at ——, 105 S.Ct. at 3031 (quoting *Chesny,* 720 F.2d at 479). Thus, at least in this limited context, Fed.R.Civ.P. 3 is procedural both in nature and as applied. *Cf.* Walker, *The 1983 Amendments to Federal Rule of Civil Procedure 4—Process, Jurisdiction and Erie Principles Revisited,* 19 Wake Forest L.Rev. 957, 976–77 (1983) (suggesting that the problem in *Walker v. Armco Steel Co.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980)—a diversity case—was that Fed.R.Civ.P. 3 was not procedural as applied).

The more difficult issue, disputed by the parties, is whether Fed.R.Civ.P. 3 directly speaks to the issue of tolling in the particular case before us. Although there is some suggestion to the contrary in *Walker,* 446 U.S. 740, 100 S.Ct. at 1978, which we discuss *infra* at 242–44, we believe that Fed.R.Civ.P. 3 applies here. Initially, we observe that Fed.R.Civ.P. 1 provides that "[t]hese rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81," and that none of the exceptions of Rule 81 apply. The Court in *Hanna* relied expressly and solely on this provision to sustain its conclusion that Fed.R.Civ.P. 4(d)(1) applied to the facts of that case. 380 U.S. at 463 n. 3, 85 S.Ct. at 1140 n. 3.

In addition, in our view, the language of Fed.R.Civ.P. 3 could not be much plainer. It states that the suit is "commenced" once the complaint is filed. "Commenced" as defined by Black's *Law Dictionary* means

---

**8.** In *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Court held that in a case in which Congress had furnished both the federal right and the limitations period the proper test of whether a rule which tolls the statute of limitations impermissibly abridges a substantive right is "whether tolling the limitation is consonant with the legislative scheme." *Id.* at 557–58, 94 S.Ct. at 768–69. *See also Burnett v. New York Central R.R.,* 380 U.S. 424, 426–27, 85 S.Ct. 1050, 1053–54, 13 L.Ed.2d 941 (1965). In *American Pipe & Construction Co.,* the Court held that the commencement of a class action, pursuant to Fed.R.Civ.P. 23(a)(1), suspends the applicable statute of limitations as to all members of the class. It found that the "mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose." *Id.,* 414 U.S. at 559, 94 S.Ct. at 769.

In the instant case, the application of Fed.R. Civ.P. 3 would, of course, have to be consistent with the congressional scheme, not the state legislative scheme, since we are dealing with a federal right cognizable only in the federal courts and the state law becomes federal law for purposes of this particular case. Assuming, however, that this test is applicable to the case at bar, it is difficult to determine whether application of Fed.R.Civ.P. 3 is consonant with the legislative scheme because a 10b–5 action is judicially implied, not expressly created by Congress. Nevertheless, because Congress expressly provided for limitations periods for other causes of action arising under the Securities and Exchange Act, which are subject to the tolling effect of Fed.R.Civ.P. 3, it is not unreasonable to assume that application of Fed.R.Civ.P. 3 in this context would be "consonant with the legislative scheme." In this vein, it is significant that in the Notes of the Advisory Committee to Fed.R. Civ.P. 3, it was conceded that the rule might operate as a tolling provision. *See also Walker v. Armco Steel Corp.,* 446 U.S. 740, 750 n. 10, 100 S.Ct. 1978, 1985 n. 10, 64 L.Ed.2d 659 (1980).

"to initiate by performing the first act," to "institute or start." Although the language of Fed.R.Civ.P. 3 does not expressly state that filing the lawsuit "tolls" the statute of limitations, the import of the language is clear that once the plaintiff has filed the complaint, he has done all that is necessary to "get the ball rolling" not only in terms of the other timing rules to which Fed.R.Civ.P. 3 relates, *see, e.g.,* Fed.R.Civ.P. 15(c), but also in terms of the statute of limitations. Indeed, the Supreme Court has recognized in *Schiavone v. Fortune,* —— U.S. ——, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), that the word "commence" carries with it tolling connotations even in the diversity context. *See id.* at ——, 106 S.Ct. at 2385.

It is also significant that Wisconsin law employs the phrase "commence" in its limitation provision, without expressly stating "tolling" to mean the limitations provision is tolled, *see* Wis.Stat. § 551.59(5) (1983). It also uses that phrase in its procedure provisions to mean tolling without express reference to tolling or the statute of limitations, yet there is evidently no dispute that "commencement" under Wisconsin law constitutes tolling.[9] We therefore believe that, *Walker* notwithstanding, the plain meaning of Fed.R.Civ.P. 3 is that filing the complaint tolls the statute of limitations.[10] *See also* Note, *Commencement Rules and Tolling Statutes of Limitations in Federal Court,* 66 Cornell L.Rev. 842, 850–51 & nn. 51, 54 (1981) and cases cited therein.

The defendants argue that the result we reach today has been foreclosed by two Supreme Court decisions: *Wilson,* 471 U.S. 261, 105 S.Ct. 1938, and *Walker,* 446 U.S. at 740, 100 S.Ct. at 1979. The defendants assert that in *Wilson* the Supreme Court determined that in non-diversity cases in which there is no governing federal statute of limitations, the question of

when an action commences is a question of tolling that is governed by state law so long as the commencement provision is an integral part of the state's statute of limitations. They argue that because the Wisconsin service of process requirement which tolls the statute of limitations for sixty days is an integral part of Wisconsin's statute of limitations, it must be applied to bar the instant action. They therefore reject plaintiffs' reliance on civil rights cases which have held that Fed.R.Civ.P. 3 governs commencement for tolling purposes either as having been overruled by *Wilson* or as having been incorrectly decided in light of *Wilson.* They further assert that, in any event, state law should control because, in their view, in *Walker* the Supreme Court decided that Fed.R.Civ.P. 3 does not directly control the issue of commencement in cases such as the one at bar.

The defendants' interpretation of *Wilson* is based on two observations made by the Supreme Court. In that case, the Court stated that although the issue of the characterization of a federal claim for limitations purposes is a question of federal law, "the length of the limitations period, and closely related questions of tolling and application, are to be governed by state law." *Id.* at 269, 105 S.Ct. at 1943 (citing *Chardon,* 462 U.S. at 657, 103 S.Ct. at 2616; *Tomanio,* 446 U.S. at 484, 100 S.Ct. at 1795; *Johnson,* 421 U.S. at 464, 95 S.Ct. at 1722). The Court also stated that the reason that questions of tolling are governed by state law is that the state's calculation of the proper length for a limitations period is ordinarily inextricably intertwined with the state's application of tolling provisions. *Wilson,* 471 U.S. at 269 n. 17, 105 S.Ct. at 1943 n. 17.

These statements do not support the interpretation that the defendants place upon them.[11] These are nothing more than re-

---

9. To be sure, Wis.Stat. § 893.02 defines "commence" in terms of a limitation provision, but it too relies on the inextricable interrelatedness of the legal meaning of the word "commence" and the statutes of limitations. ·

10. At least, of course, to the extent that Fed.R.Civ.P. 4(j) has been complied with insofar as it operates as a tolling provision. *See supra* note 7.

11. Even if they did, they would not compel a different outcome. Defendants concede, as they

statements made in passing of the general rule applicable in civil rights cases and some other federal question cases that when federal law is silent, state law is presumptively applied. As we have already observed, this rule is not an imperative to be applied in all federal question cases not governed by a federal limitations period, or in fact, even in all civil rights actions. In the passage so heavily relied upon by the defendants, the Court makes clear that reference to state law in section 1983 actions occurs only after "principles of federal law are exhausted," *id.* at 268, 105 S.Ct. at 1943 (citing 42 U.S.C. § 1988), and even then the state rule is adopted only as " 'a federal rule responsive to the need whenever a federal right is impaired.' " *Id.* at 269, 105 S.Ct. at 1943 (quoting *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969)).

Our conclusion that these statements in *Wilson* do not stand for the proposition that all integral tolling provisions apply even when there is directly applicable federal law is supported by several considerations. First, the Supreme Court has previously recognized that federal law governs the issue of tolling in federal equity actions, *see Holmberg*, 327 U.S. at 395, 66 S.Ct. at 584; *see also State of Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687 (10th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981); *Tomera v. Galt*, 511 F.2d 504, 509 (7th Cir.1975), a ruling that has been extended by the lower courts to actions at law. *See, e.g., Moviecolor, Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 83–84 (2d Cir.), *cert. denied*, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961); *see also Hobson v. Wilson*, 737 F.2d 1, 33 & n. 100 (D.C.Cir.1984), *cert.*

*denied*, —— U.S. ——, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); *cf. Burnett v. New York Central R.R.*, 380 U.S. 424, 435, 85 S.Ct. 1050, 1058, 13 L.Ed.2d 941 (1965) (adopting uniform tolling rule in FELA action).

In addition, prior to *Wilson* and after *Walker*, the federal courts consistently held that Fed.R.Civ.P. 3 applies to determine when an action brought pursuant to 42 U.S.C. § 1983 has been commenced for limitations purposes. *Hobson*, 737 F.2d at 44 n. 131; *Caldwell v. Martin-Marietta Corp.*, 632 F.2d 1184, 1188 (5th Cir.1980); *Hoffman v. Halden*, 268 F.2d 280, 302 (9th Cir.1959); *Jackson v. Duke*, 259 F.2d 3 (5th Cir.1958); *Bomar*, 162 F.2d at 140; *Wells v. City of Portland*, 102 F.R.D. 796, 799, 801 (D.Ore.1984); *Cohen v. Board of Education*, 536 F.Supp. 486, 493–95 (S.D.N.Y. 1982); *Gutierrez v. Vergari*, 499 F.Supp. 1040, 1049 (S.D.N.Y.1980); *Fitzgerald v. Appolonia*, 323 F.Supp. 1269 (E.D.Pa. 1971); *Von Clemm v. Smith*, 204 F.Supp. 110, 113 (S.D.N.Y.1962). Many courts have continued to adhere to the view even after *Wilson*. *See, e.g., DiVerniero v. Murphy*, 635 F.Supp. 1531 (D.Conn.1986); *Williams v. Allen*, 616 F.Supp. 653 (E.D.N.Y.1985); *Ruley v. Nelson*, 106 F.R.D. 514 (D.Nev. 1985). *But see Checki v. Webb*, 785 F.2d 534, 536–37 (5th Cir.1986). And, at least one court has decided that federal law governs when causes of action accrue in section 1983 cases. *See Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981).

Courts, including this one, have also found Fed.R.Civ.P. 3 to be controlling in federal question cases, other than civil rights, which are not governed by a federal statute of limitations. *See, e.g., Appleton*

---

must, that these two statements are dicta. This court has so recognized. *See Bailey v. Faulkner*, 765 F.2d 102, 104 (7th Cir.1985). The Court in *Wilson* held only that in actions based on 42 U.S.C. § 1983, the federal courts should borrow the state limitations period applicable to personal injury actions. It did not hold that in any case in which a court borrows a state limitations period it must also always borrow all tolling provisions as well. In fact, this court in

*Bailey* expressly relied on *Tomanio*, not *Wilson*, in deciding that the state tolling rule should be applied. And although the *Bailey* court appeared to give a broad interpretation to the rule set forth in *Tomanio, see Bailey*, 765 F.2d at 104, a closer examination of the case reveals that the court found that *Tomanio* controlled because the facts of the two cases were virtually indistinguishable.

*Electric Co. v. Graves Truck Lines, Inc.*, 635 F.2d 603, 608–09 (7th Cir.1980), *cert. denied*, 451 U.S. 976, 101 S.Ct. 2058, 68 L.Ed.2d 357 (1981) (filing of complaint in literal compliance with Fed.R.Civ.P. 3 is sufficient to interrupt a federal statute of limitations); *Fitzgerald*, 323 F.Supp. at 1270; *Meredith v. Glamorene Products Corp.*, 55 F.R.D. 397 (E.D.Wis.1972); *see also* 128 Cong.Rec. H 9850 n. 14 (daily ed. Dec. 15, 1982); Note, *Federal Statutes Without Limitations Provisions*, 53 Colum.L.Rev. 68, 72 (1953) and cases cited therein ("[R]elated issues ... need not be decided in accordance with state law despite the fact that it is a state statute which has fixed the period of limitation."); *cf. Hanna*, 380 U.S. at 470, 85 S.Ct. at 1143 (presumption that, when a situation is covered by one of the Federal Rules, that rule governs, displacing any state rule). This has also been the view taken by most commentators. *See, e.g.,* C. Wright, *The Law of Federal Courts* § 64, at 412 (1983); 4 C. Wright & A. Miller, *supra*, § 1056, at 179; 2 J. Moore & J. Lucas, *Moore's Federal Practice* ¶¶ 3.07[1]–[3], 3.07[4.–3–2], 3.07[5][8] (1977); Walker, *supra*, 19 Wake Forest L.Rev. at 975; Ely, *supra*, 87 Harv. L.Rev. at 729; Wheaton, *Federal Rules of Civil Procedure Interpreted*, 25 Cornell L.Q. 28, 30 (1939); Special Project, *Time Bars in Specialized Federal Common Law: Federal Rights of Action and State Statutes of Limitations*, 65 Cornell L.Rev. 1011, 1091 & n. 380 (1980); Note, *supra*, 66 Cornell L.Rev. at 850–51. *But see* Hill, *State Procedural Law in Federal Nondiversity Litigation*, 69 Harv.L.Rev. 66, 91–92 (1955).

We do not believe that in making this passing reference to the general rule to be applied in such cases, the Supreme Court in *Wilson* intended to overrule, *sub silentio*, this long line of consistent authority, especially when all precedents relied upon by the Court in *Wilson* were civil rights cases. *Cf. Walker*, 446 U.S. at 749, 100 S.Ct. at 1984 ("*Stare decisis* does not mandate that earlier decisions be enshrined forever, but it does counsel that we use caution in rejecting established law.").

This is particularly true when one considers that the Supreme Court in *Wilson* used the ambiguous phrase "tolling provisions." Although the Court in *Walker* did refer to the commencement provision as a tolling provision, for purposes of analysis, courts and commentators have generally distinguished between those provisions relating to traditional tolling doctrines (fraudulent concealment, minority, other legal disabilities) and commencement provisions. *See, e.g.,* Note, *supra*, 53 Colum.L.Rev. at 72. With regard to the former, the traditional rule has been that state law controls; with regard to the latter, federal law controls. *Id.* We therefore believe that it would be inappropriate to interpret an ambiguous statement by the Court in a manner that contradicts long-adhered-to prior practice by the courts, including that of the Supreme Court. *See also* Ely, *supra*, 87 Harv.L.Rev. at 730 (Courts should be reluctant to overturn procedural rules which have previously been adhered to, even if technically they may be legally deficient. "[M]uch of the point of a set of procedural rules is to let people get used to and rely on the routine of doing things in a certain way.")

The dicta in *Wilson*, of course, did not arise in isolation. It was based on the Supreme Court's rulings in other recent civil rights cases in which the Court gave effect to the state tolling provisions. *See, e.g., Chardon*, 462 U.S. at 650, 103 S.Ct. at 2611; *Tomanio*, 446 U.S. at 478, 100 S.Ct. at 1790; *Johnson*, 421 U.S. at 454, 95 S.Ct. at 1716. We cannot therefore reject the defendants' reliance on *Wilson* without also demonstrating why none of those other cases compel the result urged by the defendants.

The key to the result in each of those cases, as other courts have recognized, was that there was no federal tolling law directly on point. *See, e.g., DiVerniero*, 635 F.Supp. at 1535–36; *Cohen*, 536 F.Supp. at 495. In *Tomanio*, for example, the Supreme Court held that state law determined whether a plaintiff's civil rights action was tolled pending a state lawsuit arising from

the same operative facts. In so doing, the Court referred to 42 U.S.C. § 1988 in which "Congress quite clearly instructs [federal courts] to refer to State statutes *when federal law provides no rule of decision for actions brought under § 1983." Id.,* 446 U.S. at 484, 100 S.Ct. at 1795 (quoting *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (emphasis added).[12] The Court observed that the Second Circuit had formulated an *ad hoc* federal tolling rule because, in the Second Circuit's view, the state rule improperly burdened federal rights, inconsistent with the federal law, and therefore could not be applied under the express terms of 42 U.S.C. § 1988. The majority of the Court in *Tomanio* rejected the Second Circuit's view and found that state law should be applied. *Tomanio* therefore was not a case in which there was a pre-existing uniform federal law directly on point which the Supreme Court rejected in favor of the state tolling provision. Rather, it was a classic case of application of state law where federal law was silent and where the state law was found not to unduly burden or discriminate against federal rights.

In *Chardon,* the Court held that state law applied to toll the individual plaintiff's section 1983 claims pending litigation of a related class action. The Court rejected the defendant's argument that the federal tolling rule announced by the Court in *American Pipe & Construction Co.,* rather than the state rule, governed on the ground that the federal rule was not sufficiently broad to govern the issue presented in *Chardon.* It held "[i]n *American Pipe,* federal law defined the basic limitations period, federal procedural policies supported the tolling of the statute during the pendency of the class action, and a particular federal statute [Fed.R.Civ.P. 23] provided the basis for deciding that the tolling had the effect of suspending the limitations period.... [It did not] establish[ ] a uniform federal rule of decision that mandates suspension rather than renewal whenever a federal class action tolls a statute of limitations." *Id.,* 462 U.S. at 660–62, 103 S.Ct. at 2618–19.

Justice Rehnquist's dissent in *Chardon* makes clear that even in section 1983 actions, state tolling law does not govern when there is a directly controlling uniform federal tolling provision. Justice Rehnquist took the view that the *American Pipe & Construction Co.* rule, derived from Fed.R.Civ.P. 23, directly governed the issue presented and should be applied, notwithstanding the fact there was a state tolling rule directly on point. He observed that "the [Supreme] Court has recognized that federal tolling rules apply to state statutes of limitations" and that "[a] single, uniform federal rule of tolling would provide desirable certainty to both plaintiffs and defendants in § 1983 class actions." *Id.* at 666–67, 103 S.Ct. at 2621–22. (Rehnquist, J., dissenting).[13]

---

**12.** Section 1988 provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, Title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988.

**13.** The district court judge thought it irrelevant that Fed.R.Civ.P. 3 is a uniform rule. In her view, the "rule" announced in *Wilson,* derived from *Chardon, Tomanio,* and *Johnson* made no distinction between uniform and nonuniform tolling provisions. *Chardon* makes clear, how-

Finally, in *Johnson,* 421 U.S. 474, 95 S.Ct. 1727, the Supreme Court decided that the timely filing of a charge of employment discrimination with the Equal Employment Opportunity Commission pursuant to 42 U.S.C. § 2000e–5 does not toll the running of the period of limitations applicable to an action, based on the same facts, instituted under 42 U.S.C. § 1981. *Johnson,* like *Tomanio* and *Chardon,* was a case in which there were no directly controlling uniform federal tolling provisions. Thus, the issue was whether it was appropriate for the federal courts to develop such an *ad hoc* tolling law on the ground that the state tolling provision unduly burdened federal rights. *Id.* at 465, 95 S.Ct. at 1722. As in *Tomanio* and *Chardon,* the Court, in *Johnson,* found that the state tolling rule did not unduly burden the petitioner's section 1981 rights. It also rejected the petitioner's reliance on *American Pipe & Construction Co.* and *Burnett* for the proposition that the federal court should exercise its power to formulate federal tolling rules in that case. The Court found neither case helpful because in both "[t]he respective periods of limitation ... were derived directly from federal statutes rather by reference to state law. Moreover, in each case there was a substantial body of relevant federal procedural law to guide the decision to toll the limitation period, and significant underlying federal policy that would have conflicted with a decision not to suspend the running of the statute." *Id.* at 466, 95 S.Ct. at 1723. Thus *Johnson,* like *Tomanio* and *Chardon,* makes clear that state tolling rules only apply in the absence of express federal tolling rules.

Even if the Supreme Court in *Wilson, Tomanio, Chardon,* and *Johnson* did

adopt the *per se* rule proposed by the defendants, we believe that the rule is applicable only to actions brought under the Reconstruction Civil Rights Act. In that Act, Congress has expressly provided that gaps in federal law are to be filled by analogous state law. *See* 42 U.S.C. § 1988; *see also Burnett v. Gratten,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984); *Tomanio,* 446 U.S. at 483, 100 S.Ct. at 1794 ("[F]ederal courts are *obligated to apply* ... the analogous New York statute of limitations to respondent's federal constitutional claims."); Special Project, *supra,* 65 Cornell L.Rev. at 1041 n. 138. It can be argued that section 1988, in effect, imports the Rules of Decision Act analysis back into this limited class of federal question cases and, much like in diversity actions, requires the court to apply state substantive law. Under such a scheme, the broad rationale of *Walker,* 446 U.S. at 740, 100 S.Ct. at 1978, might compel a federal court to adopt the rule proposed by defendants for civil rights actions, but not for federal securities claims.[14] *See, e.g., Marek,* ‌—— U.S. at ——, 105 S.Ct. at 3017–18 (rejecting lower court's narrow construction of Fed. R.Civ.P. 68 so as not to result in perceived direct, unavoidable conflict with section 1988). *Chardon,* 462 U.S. at 650, 103 S.Ct. at 2611 (narrowly construing federal tolling rule announced in *American Pipe & Construction Co.,* 414 U.S. 538, 94 S.Ct. 756, such that state tolling rule applies).

In addition, in *Wilson* the Supreme Court recognized that section 1988 was concerned with the need to provide intrastate uniformity in all civil rights actions. The reasons for the need for intrastate, as opposed to interstate, uniformity in civil rights actions are largely absent in cases such as

ever, that whether the rule is uniform is of critical significance.

**14.** Alternatively, section 1988 might be nothing more than a congressional codification of the judicial presumption to apply state law to fill gaps in federal law. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985); *Robertson v. Wegmann,* 436 U.S. 584, 98

S.Ct. 1991, 56 L.Ed.2d 554 (1978); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); Note, *Civil Rights: Determining the Appropriate Statute of Limitations for Section 1983 Claims,* 61 Notre Dame L.Rev. 440, 442 (1986). If this is true, it supports our conclusion that the application of analogous state law is discretionary, not mandatory.

the one at bar.[15] The Reconstruction Civil Rights Act was designed to give citizens a remedy, not substantive rights, against their state officials for what were largely perceived as "ancient common-law" torts. *Wilson,* 471 U.S. at 272–73, 105 S.Ct. at 1945. Thus, states have a strong interest in having their officials subject to uniform limitations periods and in having their state law torts which have been "constitutionalized" subject to the same procedures. But states have no such definable interest in 10b–5 cases that is sufficient to require nonuniformity of procedures among the federal courts.[16] This conclusion is particularly appropriate in cases such as the one at bar which are cognizable only in the federal courts. Special Project, *supra,* 65 Cornell L.Rev. at 1033 n. 102; *cf. Burnett,* 380 U.S. at 433, 85 S.Ct. at 1057 (Rejecting application of various state saving statutes because they "would defeat the aim of a federal limitation provision designed to produce national uniformity."); *Holmberg,* 327 U.S. at 392, 66 S.Ct. at 582 (suggesting that the policy of uniformity with the probable outcome in the courts of the forum state

was inapplicable in a non-diversity case where the plaintiff asserted an equitable right created by federal law.). *But see Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036, 1041 (10th Cir.1980) ("For reasons equally applicable to implied securities fraud actions, the Supreme Court has recently held that coordinate state tolling rules apply along with state statutes of limitations in suits brought under 42 U.S.C. § 1983.").

The defendants correctly observe that the Supreme Court has rejected the argument that uniformity of procedure in the federal courts is a sufficient basis upon which to reject application of state limitations periods. *See, e.g., Wilson,* 471 U.S. at 275, 105 S.Ct. at 1947; *Tomanio,* 446 U.S. at 489, 100 S.Ct. at 1797. *But see, e.g., DelCostello,* 462 U.S. at 151, 103 S.Ct. at 2281. In our view, the rejection of that argument is based, in part, on the courts' reluctance to undertake to formulate limitations periods. But as we have previously observed, the courts have been less reluc-

**15.** In fact, some commentators have argued that even in the civil rights context there is a paramount federal interest in national uniformity. *See, e.g.,* Note, *supra,* 61 Notre Dame L.Rev. at 452; Note, *A Call for Uniformity: Statutes of Limitations in Federal Civil Rights Actions,* 26 Wayne L.Rev. 61 (1979); *cf. DelCostello,* 462 U.S. at 151, 103 S.Ct. at 2281. Even in *Wilson,* the Court relied on the need for national uniformity when deciding how best to characterize section 1983 claims.

**16.** To the extent that the states do have any interest, the application of Fed.R.Civ.P. 3 does not unduly compromise their right to set certain limitations periods. *Cf. Walker,* 446 U.S. at 751–52 n. 12, 100 S.Ct. at 1985–86 n. 12 (service requirement does little to keep stale claims out of court); *see* Note, *Federal Practice,* 32 S.C.L. Rev. 627, 633 (1981). The action must be filed in federal court before the state statute of limitations expires, and it must be served within 120 days thereafter or the action will abate. *See* Fed.R.Civ.P. 4(j). Defendants thereby are provided with reasonable notice of the claim and are protected against stale claims when they reasonably believed their liability had ceased. In the instant case, for example, the defendants were served within one month of when they would have had to have been served under state law, and they do not claim that this one month

delay prejudiced them in any way. *Cf. Hanna,* 380 U.S. at 462–63, 85 S.Ct. at 1139–40 (federal rule controls over state rule when rules directly conflict and when no change in outcome results); *Sylvestri v. Warner & Swasey Co.,* 398 F.2d 598, 606 (2d Cir.1968) (When compliance with both state and federal commencement requirements is still possible at the time the action is instituted, the outcome is not determined ultimately by filing in federal rather than state court.). *See* Ely, *supra,* 87 Harv.L.Rev. at 710. In that article, Professor Ely observed:

> The point of *Hanna* dictum is that it is difficult to find unfairness of a sort that would have troubled the framers of the Rules of Decision Act, or of a sort whose elimination would justify disrupting a federal court's routine, when the difference between the federal and state rules is trivial, when their requirements are essentially fungible.... Thus, whenever the sanction for noncompliance is dismissal, there is a sense in which "enforcement" of the rule can be outcome determinative. But it is a backhanded sense, and one that implicates the concerns that gave rise to the Rules of Decision Act only when the underlying mandate thus enforced is sufficiently more or less burdensome than its state counterpart to support a plausible claim of unfairness.

*Id.* at 713–14 (footnotes omitted).

tant to adopt or formulate federal tolling rules, *see supra* note 6, and they have done so on the ground of promoting uniformity of procedure among the federal courts. *See, e.g., Moviecolor, Ltd.,* 288 F.2d at 80; *cf. Hanna,* 380 U.S. at 462–63 n. 1, 85 S.Ct. at 1139–40 n. 1 (adopting section 4(d)(1) on the ground, *inter alia,* of the promotion of uniformity, even though the Court apparently recognized that the state service rule that was ultimately rejected, operated, at least in part, as an integral tolling provision).[17]

In *Moviecolor, Ltd.,* for example, Judge Friendly found uniformity a persuasive reason for employing a uniform federal tolling doctrine in cases at law under the Clayton Act. He reasoned that there was a paramount federal interest in the uniform administration of rights cognizable only in the federal courts, such that "the state statute of limitations should be tolled during the defendant's fraudulent concealment of the alleged wrongful act." 288 F.2d at 84 (citing *Holmberg,* 327 U.S. at 392, 66 S.Ct. at 582) (introducing fraudulent concealment doctrine into federal suits at equity); *see Newman v. Prior,* 518 F.2d 97, 100 (4th Cir.1975) (In federal securities claim, "[e]ven when state law furnishes the period of limitation, federal law controls its commencement."); *see also* Special Project, *supra,* 65 Cornell L.Rev. at 1031 n. 91 ("Mandatory application of state law on these subsidiary issues could seriously undermine federal interests involved in suits on federal claims."); Note, *Limitation Borrowing in Federal Courts,* 77 Mich.L. Rev. 1127, 1136 (1979) (Even when federal courts borrow state statutes of limitations, courts must consider the problem of main-

taining uniformity among federal courts in different states enforcing the same right.); *cf.* Mishkin, *The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision,* 105 U.Pa.L.Rev. 797, 804 (1957) ("[T]here remains a freedom, after decision to incorporate local law, to control the extent and methods of that adoption which is not present when a determination has been made that state law will apply because the court has not competence to do otherwise."). *But cf. Tomanio,* 446 U.S. at 483, 100 S.Ct. at 1794 (federalism favoring absorption not only of state period, but also subsidiary issue of tolling); *Johnson,* 421 U.S. at 463–65, 95 S.Ct. at 1721–23 (state period incomprehensible without absorbing integrally-related tolling rules).

The defendants argue that if uniformity of procedure is a decisive factor, it should operate against the application of Fed.R. Civ.P. 3 in these cases. They assert that nonuniformity, rather than uniformity, is promoted because actions will be subject not only to different limitations periods in each jurisdiction, but to a separate federal tolling rule as well.

We do not agree. In our view, application of Fed.R.Civ.P. 3 will promote greater uniformity because the commencement of all federal causes of action will be governed by the same rule. Although the causes of action may be subject to different state limitations periods, all such cases in every jurisdiction will be deemed commenced as of the date of filing.[18] In this vein, it is significant that the application of state commencement rules might unduly complicate procedures in the federal sys-

---

**17.** In *Hanna,* the Court observed:
> One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules. This is especially true of matters which relate to the administration of legal proceedings, an area in which federal courts have traditionally exerted strong inherent power, completely aside from the powers of Congress expressly conferred in the Rules.

380 U.S. at 472–73, 85 S.Ct. at 1144–45 (quoting *Lumbermen's Mutual Casualty Co. v. Wright,* 322 F.2d 759, 764 (5th Cir.1963)).

**18.** Furthermore, we note this is not a situation in which the application of the federal tolling rule renders the state limitations period a "meaningless number." *See* Note, *supra,* 22 UCLA L.Rev. at 961 (criticizing federal tolling rule announced in *Holmberg* for eviscerating state limitations period). The complaint still must be filed within the limitations period and served within 120 days thereafter. *See supra* note 16.

tem. As one commentator has observed, the problems created by applying state statutes of limitations when cases are, for example, transferred within the federal system because of improper venue or lack of personal jurisdiction would be substantially compounded by applying state commencement rules. *See* Note, *supra*, 66 Cornell L.Rev. at 858 n. 94. These procedural complications would not be counterbalanced by any definable state interest. This nonuniformity also might lead to serious inequities as plaintiffs who had successfully complied with all tolling requirements under one state law might have failed to achieve it under the new forum law and hence would be barred.

Based on the foregoing discussion, we believe that the Supreme Court did not hold in *Wilson, Tomanio, Chardon,* or *Johnson,* that when a state statute of limitations is borrowed, all of its integral tolling provisions must also be borrowed even in the face of directly controlling uniform federal law.[19]

This brings us to what we believe is the defendants' stronger argument—*i.e.,* that under *Walker,* 446 U.S. at 749, 100 S.Ct. at 1984, Fed.R.Civ.P. 3 does not operate as a tolling provision in cases such as the one at bar. Most of the relevant facts of *Walker* are virtually indistinguishable from the facts here. The state statute of limitations period provided that a lawsuit was not commenced until the complaint was filed and the defendant was served with a copy of the complaint. Service could be effectuated after the limitations expired, but it had to be completed within sixty days of filing. The plaintiffs filed suit within the relevant state statute of limitations period, but failed to effectuate service of process within the requisite sixty-day period. The plaintiffs argued that Fed.R.Civ.P.3 controlled the issue of when an action was commenced for purposes of tolling the statute of limitations. The Supreme Court rejected this argument, finding that the federal rule did not control.

The defendants argue that this analysis controls this case. We disagree. To be sure, in *Walker,* the Court found that "the scope of ... Federal Rule [3] ... [was not] sufficiently broad to control the [tolling] issue before the Court," 446 U.S. at 750, 100 S.Ct. at 1985, and that there was nothing in that rule to indicate that Congress intended it to toll a statute of limitations, "much less that it purported to displace state tolling rules for purposes of state

---

19. Some commentators have observed that it might be difficult for a court to rule that Fed.R.Civ.P. 3 tolls the applicable state statute of limitations in cases such as the one at bar under the broad interpretation of *Walker.* They argue that "[i]f the plain meaning of the rule controls, then the scope of rule 3 should not differ [from diversity actions] in actions to enforce federal rights." Note, *supra,* 66 Cornell L.Rev. at 851; *see also* Fed.R.Civ.P. 3 advisory committee note 4, 28 U.S.C.App. at 394–95 (1976); H.R. 7154, 97th Cong., 2d Sess. n. 14, *reprinted in* 1982 U.S.Code Cong. & Ad.News 4437, 4441 n. 14. In their view, such an approach avoids the need to make the same phrase mean one thing in one legal context and another in another legal context. They argue that the better route for a court to follow is to fashion a federal common law from Fed.R.Civ.P. 3 in much the same way that a federal court fashions federal common law by looking to the most analogous state limitations period. Note, *supra,* 66 Cornell L.Rev. at 855. The commentators also choose this common-law rule over others such as tolling upon the filing of the complaint and the issuance of service or upon the obtaining of service because it comports with almost prior uni-

form practice in nondiversity action and because it is merely an extension of a longstanding practice in equity. *Id.* at 856 n. 90.

Although we recognize that a federal court is empowered to devise rules through federal common law, *see* Special Project, *supra,* 65 Cornell L.Rev. at 1034; Note, *supra,* 66 Cornell L.Rev. at 857 n. 92, we decline to adopt that approach. Our decision that Fed.R.Civ.P. 3 directly applies in this case does not require us to make a heretofore unheard of distinction between the "plain meaning" of the rule in non-diversity cases and its "plain meaning" in diversity cases. There is no doubt that Fed.R.Civ.P. 3 operates as a tolling provision in federal causes of action expressly governed by federal limitations periods unless Congress has otherwise provided a commencement provision. Thus, there is already a pre-existing distinction between these "plain meanings" of the rule in some non-diversity and all diversity cases. Our approach merely draws the line between non-diversity and diversity actions, rather than categorizing a large category of non-diversity actions as diversity actions.

statutes of limitations." *Id.* at 751, 100 S.Ct. at 1985. *But see Schiavone,* ⸺ U.S. at ⸺, 106 S.Ct. at 2385 (In a diversity case, the Supreme Court stated "[r]ule 3 concerns the 'commencement' of a civil action. Under Rule 15(c), the emphasis is upon 'the period provided by law for commencing the action against' the defendant. An action is commenced by the filing of a complaint and, so far as Time is concerned, no complaint against it was filed on or prior to May 19, 1983."). *Walker,* however, was based on diversity jurisdiction involving only state-created rights. As such, it was governed by *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and the Rules of Decision Act, and the Court in *Walker* expressly recognized that its decision did not necessarily control cases such as the one at bar. *See id.* 446 U.S. at 751 n. 11, 100 S.Ct. at 1985 n. 11; *see also Guaranty Trust Co. v. York,* 326 U.S. 99, 101, 65 S.Ct. 1464, 1465, 89 L.Ed. 2079 (1945); C. Wright & A. Miller, *supra,* § 1057 at 191; Note, *supra,* 66 Cornell L.Rev. at 851. In fact, it recognized that in a previous case it had suggested "that in suits to enforce rights under a federal statute Fed.R.Civ.P. 3 means that filing of the complaint tolls the applicable statute of limitations." *Walker,* 446 U.S. at 751 n. 11, 100 S.Ct. at 1985 n. 11 (citing *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 533, 69 S.Ct. 1233, 1234, 93 L.Ed. 1520 (1949)).[20] In *Ragan,* the Court observed:

> [T]he argument [is] that the Federal Rules of Civil Procedure determine the manner in which an[y] action is commenced in the federal courts—a matter of procedure which the principle of *Erie R. Co. v. Tompkins* does not control. It is accordingly argued that since the suit was properly commenced in the federal

court before the Kansas statute of limitations ran, it tolled the statute.

> That was the reasoning and result in *Bomar v. Keyes,* 162 F.2d 136, 141 [ (2d Cir.1947), a civil rights case]. But that case was a suit to enforce rights under a federal statute. Here, as in that case, there can be no doubt that the suit was properly commenced in the federal court.

337 U.S. at 532–33, 69 S.Ct. at 1234–35 (footnote omitted). *But see Hanna,* 380 U.S. at 470, 85 S.Ct. at 1143 (characterizing *Ragan* as involving a federal rule that did not govern the tolling of statutes of limitations).

The rationale of *Walker,* of course, is broader than *Ragan.* In *Ragan,* the Court applied state law because the state commencement procedure was substantive and an integral part of the state statute of limitations. *Walker,* however, appeared to go beyond this by constricting the plain meaning of Fed.R.Civ.P. 3, in order to avoid an "unavoidable" direct conflict with the state commencement rule. *Walker,* 446 U.S. at 749, 100 S.Ct. at 1984 (quoting *Hanna,* 380 U.S. at 470, 85 S.Ct. at 1143). In fact, some commentators have argued that the Court awkwardly construed Fed.R. Civ.P. 3 in *Walker* in order to avoid a serious Rules Enabling Act problem, *see* Walker, *supra,* 19 Wake Forest L. Rev. at 977–78; Note, *supra,* 32 S.C.L. Rev. at 635; Note, *supra,* 66 Cornell L.Rev. at 852 n. 62, a problem that, as we have demonstrated, does not exist in this case. *See* discussion, *supra,* at 233–235.

In addition, in reaching this result, the Court in both *Walker* and *Ragan* reasoned that any other result would give the state claim longer life in the federal court than it would enjoy in the state court. *Walker,* 446 U.S. at 746, 748, 100 S.Ct. at 1983,

---

**20.** In *Walker,* the Court observed that in the original advisory committee notes on Fed.R. Civ.P. 3 committee members recognized that the tolling of a statute of limitations might affect substantive rights. It observed that the Note "does not indicate, however, that Rule 3 was intended to serve as a tolling provision for statute of limitations purposes, it only suggests that the Advisory Committee thought the Rule might

have that effect." 446 U.S. at 750, n. 10. In the House Report, H.R. 7154, 97th Cong., 2d Sess. n. 14, *reprinted in* 1982 U.S.Code Cong. & Ad. News, 4441 n. 14, on Rule 3, the Representatives recognized the ambiguity caused by the broad rationale of the Supreme Court's decision in *Walker,* but refused to conclude that *Walker* would mandate application of the state tolling provision in a federal question case.

1984; *Ragan*, 337 U.S. at 533–34, 69 S.Ct. at 1234–35. *But see Hanna*, 380 U.S. at 466–69, 85 S.Ct. at 1141–43 (In analyzing the scope of a federal rule in a diversity case the "outcome-determinative" test is not controlling and must be viewed in light of discouragement of forum-shopping and avoidance of inequitable administration of the laws.). The Court's main focus in *Walker* and *Ragan* therefore was with the possibility that the state claim might have longer life in the federal court than in the state court. The reasoning of *Walker* is simply inapposite here. Even assuming that all commencement procedures are an integral part of the state's statute of limitations, in cases such as the one at bar, courts are simply not confronted with the possibility that failure to adopt the state commencement procedure would substantially alter the enforcement of a state-created right. Compare the civil rights case where the failure to adopt the state commencement procedure would give a "constitutionalized" tort claim longer life than an ordinary tort claim in state court.

Thus, even *Walker* makes clear that the rationale applicable to diversity cases is inapposite in federal question cases because the federalist considerations, including the Rules of Decision Act analysis, are absent. *See DiVerniero*, 635 F.Supp. at 1535; Special Project, *supra*, 65 Cornell L.Rev. at 1091 n. 380 ("If *Walker* is not simply an interpretation of rule 3, but an '*Erie* case,' the application of state commencement law may be a product of limitations upon the scope of the federal rules imposed by the Rules Enabling Act, 28 U.S.C. § 2072 (1976). Under this view the application of rule 3 might be broader in nondiversity cases than in diversity cases."); Note, *supra*, 66 Cornell L.Rev. at 851 ("The opinion in *Walker* suggests that the Court looked beyond the plain meaning of Rule 3 ... [b]y focusing on the substantive component of state law...."); *cf. Levison v. Deupree*, 345 U.S. 648, 75 S.Ct. 914, 97 L.Ed. 1319 (1953) (In admiralty action, federal law controls the issue of relation back of amendments.); *Jones & Laughlin Steel v. Mon River Towing, Inc.*, 772 F.2d 62, 65–66 (3d Cir.1985) (In admiralty action, Fed.R.Civ.P. 4(j), not 42 U.S.C. § 742, governs when service of process must be made.).

Several recent labor cases support the result we reach today. *See Macon v. I.T.T. Continental Baking Co.*, 779 F.2d 1166 (6th Cir.1985); *Berthelot v. Martin Marietta Corp.*, 630 F.Supp. 929 (E.D.La.1986); *Thomsen v. United Parcel Service*, 608 F.Supp. 1244 (S.D.Iowa 1985). Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1982), is the statute of limitations applicable to unfair labor practice claims. It provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the [National Labor Relations] Board and the service of a copy thereof upon the person against whom such charge is made." In *DelCostello*, the Supreme Court considered which statute of limitations should be applied to a "hybrid" claim that an employer had breached a provision of a collective bargaining agreement, *see* 29 U.S.C. § 185 (1982), and that the union had breached its duty of fair representation by mishandling the grievance proceedings, a claim for which Congress has not provided a limitations period. The Court overruled prior cases in which it had held that state statutes of limitations for vacation of arbitration awards should govern, borrowing instead the six-month period set forth in section 10(b) of the Act. The Court noted that the general rule is that federal courts borrow a limitations period from the state in cases such as these, but that federal courts are not obligated under the Rules of Decision Act, 28 U.S.C. § 1652, to borrow a state, rather than a federal, limitations period. 462 U.S. at 159–61 n. 13, 103 S.Ct. at 2287–89 n. 13. It found that state statutes of limitations were "unsatisfactory vehicles for the enforcement of" this federal "hybrid" cause of action. It thus looked to federal law and decided that section 10(b) should be applied because it was "actually designed to accommodate a balance of interests very similar" to that presented in

---

the section 301/fair representation setting. *Id.* at 169, 103 S.Ct. 2293.

In *Macon, Berthelot,* and *Thomsen,* each of the defendant unions argued that the employee's "hybrid" suit was untimely because, although the complaint was filed within the six-month period of section 10(b), it was not also served on them within that six-month period as required by section 10(b). In the unions' view, in ruling that section 10(b) applied to these types of actions, the *DelCostello* Court intended to adopt both its filing and service requirements.

All of those lower courts rejected this interpretation of *DelCostello,* employing the same rationale. They observed that in *DelCostello,* the Supreme Court focused its analysis on "discover[ing] ... the appropriate length of time within which to commence a hybrid ... action," and not on the interrelated issue of the application of tolling provisions. *Thomsen,* 608 F.Supp. at 1245; *accord Macon,* 779 F.2d at 1170 & n. 2; *Berthelot,* 630 F.Supp. at 930. The courts further observed that although "limitations periods and tolling provisions are closely interrelated," it did not compel a court "to deviate from the general rule that in a federal suit to enforce a federal right, the filing of the complaint tolls the limitations period." *Thomsen,* 608 F.Supp. at 1245; *accord Macon,* 779 F.2d at 1170 n. 2. In the courts' view, following a contrary rule would promote nonuniformity among suits brought in federal courts. In reaching this result, the courts also relied on Fed.R.Civ.P. 4(a), providing for service of process, and on cases which held that

even when a state limitations period is borrowed, tolling occurs upon filing (in accordance with Fed.R.Civ.P. 3) notwithstanding the fact that the state's law requires service on the defendant to toll the statute of limitations. *Macon,* 779 F.2d at 1170 n. 2, 1171; *Thomsen,* 608 F.Supp. at 1245–46.

Finally, relying on Justice White's dissent from the denial of certiorari in *Simon v. Kroger Co.,* 471 U.S. 1075, 105 S.Ct. 2155, 85 L.Ed.2d 511 (1985),[21] a case in which the Eleventh Circuit had reached precisely the opposite result, *see also Williams v. Greyhound Lines, Inc.,* 756 F.2d 818, 820 (11th Cir.1985) and cases cited therein; *West v. Conrail,* 780 F.2d 361 (3d Cir.1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 3293, 92 L.Ed.2d 708 (1986), the courts noted that the rule proposed by the unions would drastically reduce the six-month limitations period since the plaintiffs would have to effectuate service of process in the manner prescribed by the Federal Rules. On these grounds the courts concluded, as did Justices White, Brennan, and Marshall, that tolling was governed by the Federal Rules and that the result reached by the Eleventh Circuit was "obviously incorrect."

These cases support the view that *Wilson* and *Walker* notwithstanding, cases such as the one at bar are governed by Fed.R.Civ.P. 3 and 4. They recognize that when a federal court borrows a limitations period, it is not required to adopt all integral tolling provisions, particularly when there is a federal rule which directly controls the issue. Although each of these

---

**21.** In dissent, Justice White, joined by Justices Brennan and Marshall, stated:

The lower courts agree that a suit in federal court on a federal cause of action is commenced, and the statute of limitations tolled, upon the filing of the complaint. *See, e.g., Hobson v. Wilson,* 737 F.2d 1, 44 (CADC 1984); Fed.Rule Civ.Proc. 3; 2 J. Moore & J. Lucas, Moore's Federal Practice ¶ 3.07 (4.–3–2] (1984). While the time for service of process is not open-ended, see Fed.Rules Civ.Proc. 4(a), 4(j), it need not occur within the limitations period. Ordinarily federal practice thus conflicts with the specific terms of this borrowed statute of limitations. In light of this

inconsistency, the brevity of the limitations period, and the fact that § 10(b) was not intended to apply to judicial proceedings, the result below is obviously incorrect. In practical effect, the Eleventh Circuit's ruling shortens the 6–month period by the amount of time necessary to effect service under the Federal Rules. Section 10(b) does not have a similar impact in administrative proceedings, in which service is accomplished merely by placing a copy of the charge in the mail. Compare Fed.Rule Civ.Proc. 4 with 29 CFR § 102.113(a) (1984).

*Simon v. Kroger Co.,* 471 U.S at 1076, 105 S.Ct. at 2156.

cases was decided after the Supreme Court decided *Wilson*,[22] in none of them did the court address the applicability of or believe they were barred by the dictum of *Wilson* that the defendants in this case assert is controlling. And, the Sixth Circuit found neither *Wilson* or *Walker* to be controlling on the same grounds that we have set forth above. *Macon*, 779 F.2d at 1172 & n. 5.

In sum, although the result urged by the defendants is not without some support, the overwhelming weight of both judicial and scholarly authority supports the application of Fed.R.Civ.P. 3 to cases such as the instant one. The passing dicta of the Supreme Court in *Wilson* is too slender a reed upon which to reject this weight of authority, particularly in light of other Supreme Court dicta in *Ragan, Walker,* and *Hanna* which counsel a contrary result. The difficult issue raised by this case would, of course, have been obviated had Congress provided a federal limitations period. We join the growing number of commentators and courts who have called upon Congress to eliminate these complex cases, that do much to consume the time and energies of judges but that do little to advance the cause of justice, by enacting federal limitations periods for all federal causes of action. *See, e.g.,* Special Project, *supra,* 65 Cornell L.Rev. at 1105; Note, *supra,* 61 Notre Dame L.Rev. 440, 452–53 (1986); Note, *supra,* 77 Mich.L.Rev. at 1146; Note, *supra,* 53 Colum.L.Rev. at 77–78. Until such time as Congress heeds that call, however, courts must continue to resolve these cases by reconciling apparently conflicting, and often ambiguous, authorities. In this case, upon sifting through the authorities, we conclude that Fed.R.Civ.P. 3 applies to toll a state statute of limitations which governs a federal cause of action solely because of the absence of an express federal limitations period.

### III

The defendants also argue that even if we find that the federal claim was timely, we should affirm the dismissal with prejudice of the related state law securities claim that was subject to the same three-year Wisconsin statute of limitations.[23] We agree. Under the rationale of *Walker* and *Ragan,* no other result is permissible. The plaintiffs at oral argument suggested that they could circumvent this result by amending the complaint to allege the state law claim and have that amendment relate back to the date of filing such that the state securities claim would be timely. This suggestion ignores the fact that even under the relation-back doctrine the amendment is timely only if the amended claim would have been timely "commenced" had it been filed on the date to which the amendment relates back. *Walker* and *Ragan* demonstrate that in this case the amended securities claim would not have been properly commenced as of that date and hence it is therefore barred.

Regarding the plaintiffs' negligence and fraud claims, we also agree with the defendants that those claims were properly dismissed without prejudice because, although the six-year limitations period has not yet expired, the plaintiffs failed to serve the defendants within sixty days of filing. Wis.Stat. § 801.02(1) (1983). However, because those claims are not yet time-barred, the plaintiffs reserve the right to amend the complaint and comply with state service requirements. Relation-back is of no consequence because the actions are not yet time-barred.

The judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings.

---

**22.** Justice White's dissent in *Simon* was also filed after *Wilson* was decided.

**23.** Although the district judge dismissed the state law claims under *Gibbs,* this court can affirm that dismissal on any ground that the record supports and that was properly preserved by the parties. Those criteria have been met in this case.